James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,**
**OLSTEIN, BRODY & AGNELLO**
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

Scott A. Bursor
Joseph I. Marchese
**BURSOR & FISHER, P.A.**
369 Lexington Avenue, 10th Floor
New York, New York  10017
(212) 989-9113

Antonio Vozzolo
Christopher Marlborough
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, New York  10017
(212) 983-9330

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLENE DZIELAK and SHELLEY BAKER, on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>  v.<br><br>WHIRLPOOL CORPORATION, LOWE'S COMPANIES, INC., and SEARS HOLDINGS CORPORATION,<br><br>      Defendants. | Civil Action No.<br><br><br>**COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Charlene Dzielak and Shelley Baker, by way of Complaint against Defendants, say:

## NATURE OF THE ACTION

1. This is a class action against defendants Whirlpool Corporation ("Whirlpool"), Lowe's Companies, Inc. ("Lowe's") and Sears Holdings Corporation ("Sears") (collectively

"Defendants") for misrepresenting the energy efficiency of Maytag Centennial washing machines, model numbers MVWC6ESWW0, MVWC6ESWW1, and MVWC7ESWW0 (the "Mislabeled Washing Machines") by promoting them as ENERGY STAR®-qualified and labeling them with the ENERGY STAR® logo.[1]  In fact, the Mislabeled Washing Machines do *not* meet the ENERGY STAR® standards.

2.      ENERGY STAR®-qualified washing machines are required by the U.S. Department of Energy ("DOE") to exceed minimum standards for energy and water efficiency. Qualified washing machine models use approximately 37% less energy and 50% less water than standard models.  They are more expensive than standard models, but they come with the promise of reduced energy and water bills that, over time, will generate enough savings to recoup the higher price.  This is the fundamental bargain the ENERGY STAR® program offers: consumers pay a higher up-front price initially but save more on energy bills over time using the product.

3.      Defendants' misrepresentations and false labels rendered that bargain illusory. For class members who purchased the Mislabeled Washing Machines, the promised savings from reduced energy bills never came.  Instead, class members were hit with a costly double-whammy: a higher up-front price due to the substantial price premium that ENERGY STAR® washing machines command in the marketplace, followed by higher energy bills over the washing machine's useful life, since its energy efficiency is substantially worse than what was promised.  Each class member paid a higher initial price for their washing machine and will pay

---

[1] The MVWC6ESWW1 is the basic model.  The MVWC6ESWW0 adds an EMI/RFI filter to reduce electrical and radio interference.  It shares the same ENERGYGUIDE label as the MVWC6ESWW1.  The MVWC7ESWW0 adds a glass top for cosmetic purposes.  Otherwise, the interior and exterior parts are virtually identical.  These three models share the same motor, cabinet, electric wiring, control knobs, timer knobs, wash basket, agitator, drive tube, pump, and clutch.  Furthermore, they have identical energy usage, water usage, and load capacity.

higher energy bills every month – month after month and year after year – for as long as the washing machine remains in use.

4.     Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated purchasers of the Mislabeled Washing Machines, for violation of the Magnuson-Moss Warranty Act, breach of express warranty, breach of implied warranty of merchantability, unjust enrichment, violation of the New Jersey Consumer Fraud Act, violation of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq*., Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200 *et seq*., and False Advertising Law ("FAL"), Business & Professions Code §§ 17500 *et seq*., , and violation of the consumer fraud laws of the various states.

## THE PARTIES

5.     Plaintiff Charlene Dzielak is a citizen of New Jersey, residing in Middlesex County.

6.     Plaintiff Shelley Baker is a citizen of California, residing in Rancho Cucamonga, California.

7.     Defendant Whirlpool is a Delaware corporation with its principal place of business in Benton Harbor, Michigan.  Whirlpool is one of the world's leading manufacturers of home appliances.  Whirlpool represents that it "is an industry leader in developing high-performance appliances that help conserve the earth's resources and allow homeowners to use resources more efficiently."   Whirlpool's Chairman and CEO, Jeff M. Fettig, boasts on Whirlpool's corporate website that, "At Whirlpool Corporation, we take our environmental responsibilities very seriously.  Just as we have taken a global approach to our home appliance business, we believe our world's environmental issues, such as climate change, must be addressed in a similarly comprehensive way.  This is why we continue to develop innovative

products that minimize their impact on the environment while making our consumers' lives easier."

8.      Defendant Lowe's is a North Carolina corporation with its principal place of business in Mooresville, North Carolina.  Lowe's is the second largest home improvement retailer in the world and has approximately 1,725 home improvement stores in the United States, Canada, and Mexico.  Lowe's is a seven-time recipient of the ENERGY STAR® Partner of the Year Award in the Partner Retailer Category.

9.      Defendant Sears is a Delaware corporation with its principal place of business in Hoffman Estates, Illinois.  Sears is the parent company of Sears, Roebuck and Co., the nation's fourth largest broadline retailer with approximately 3,900 full-line and specialty retail stores in the United States and Canada, and claims to be "the leading home appliance retailer."  Sears has made public statements claiming it sells more Energy Star rated appliances than any other retailer.

10.     At all times relevant to the allegations in this matter, Defendants Whirlpool, Lowe's, and Sears acted in concert, with the knowledge and approval of the other defendant and/or as the agent of the other defendant within the course and scope of the agency, regarding the acts and omissions alleged.

**JURISDICTION AND VENUE**

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question).  This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

12.     This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount in controversy exceeds

$5,000,000.00, exclusive of interest, fees, and costs, and at least one class member is a citizen of a state different from Defendants.

13.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants Whirlpool, Lowe's, and Sears all do business throughout this district, and a substantial part of the events giving rise to Ms. Dzielak's claims took place within this judicial district.

## FACTS COMMON TO ALL CLAIMS

14.     The Energy Policy and Conservation act of 1975 ("EPCA"), 42 U.S.C. § 6291, *et seq.*, established an energy conservation program for major household appliances.  EPCA was amended by the National Energy Conservation Policy Act of 1978 ("NECPA"), Pub. L. 95-619, to, among other things, give the DOE authority to regulate the minimum energy efficiency of several products, including washing machines.  Further amendments to EPCA in the National Appliance Energy Conservation Act of 1987 ("NAECA"), Pub. L. 100-12, established minimum energy efficiency standards for washing machines.

15.     ENERGY STAR® is a government-backed program to "identify and promote energy-efficient products in order to reduce energy consumption, improve energy security, and reduce pollution through voluntary labeling of, or other forms of communication about, products and buildings that meet the highest energy conservation standards."  *See* 42 U.S.C. § 6294a.  The program is jointly administered by the DOE and the Environmental Protection Agency ("EPA").  In order to qualify for the ENERGY STAR® program, most washing machines must be at least 37% more energy efficient than the minimum energy efficiency standards mandated by federal law.

16.     Participation in the ENERGY STAR® program has a significant impact on the marketability of products. The message conveyed by the ENERGY STAR® logo is that the

5

consumer can maximize his or her energy savings while helping to protect the environment.  The national retailers that dominate the appliance market rely extensively on ENERGY STAR®-related promotions to bring consumers to the store and sell washing machines.

17.     Whirlpool and its retail partners aggressively marketed the Mislabeled Washing Machines based on their ENERGY STAR® rating.  For example, the listing of features for model MVWC6ESWW on Amazon.com begins:

> This 4.0 cu. ft. I.E.C. energy star qualified washer pays for itself in just over six years compared to pre-2004 conventional washers, based on lifetime water and energy savings.

*See* http://www.amazon.com/Maytag-Centennial-MVWC6ESWW-Top-Load-Washer/dp/B002ACHJF0/ref=cm_cr_pr_product_top/185-2908430-1600761 (accessed Jan. 4, 2012).

18.     On November 30, 2009, Plaintiff Charlene Dzielak purchased a Maytag Centennial MVWC6ESWW1 washing machine at a Lowe's retail store near her home in Middlesex County.  She paid $409.00 plus tax, which included a substantial price premium due to its supposed energy efficiency and ENERGY STAR® qualification.  She would not have purchased the Maytag Centennial MVWC6ESWW1 if she had known that it was not, in fact, ENERGY STAR® compliant.

19.     On December 1, 2010, Plaintiff Shelley Baker purchased a Maytag Centennial MVWC6ESWW1 washing machine at a Sears retail store in Ontario, California.  She paid $439.93 plus tax and delivery, which included a substantial price premium due to its supposed energy efficiency and ENERGY STAR® qualification.  She would not have purchased the Maytag Centennial MVWC6ESWW1 if she had known that it was not, in fact, ENERGY STAR® compliant.

20.     On September 8, 2010, Springboard Engineering (a division of Underwriters Laboratories Verification Services) laboratories in Newton, Iowa completed DOE efficiency testing of a Maytag Centennial MVWC6ESWW1.  The results showed the unit did not meet ENERGY STAR standards.

21.     On September 20, 2010, the DOE notified Whirlpool that DOE-initiated testing revealed that Whirlpool's model MVWC6ESWW1 did not meet the applicable ENERGY STAR energy efficiency requirements.

22.     After consulting with Whirlpool, the DOE proceeded with testing of additional units.

23.     From January 3 through January 12, 2011, Springboard Engineering laboratories conducted DOE efficiency testing of four additional units of the Maytag Centennial MVWC6ESWW1.  The results showed again that these units did not meet ENERGY STAR® standards.

24.     On January 19, 2011, the DOE notified Whirlpool that the second round of testing confirmed that model MVWC6ESWW1 does not meet ENERGY STAR® requirements.

25.     On March 16, 2011, the DOE referred the matter to the EPA, the brand manager for ENERGY STAR®, for appropriate action.

26.     On information and belief, Whirlpool and the EPA reached an informal and private agreement whereby Whirlpool agreed to cease and desist from the manufacture or sale of the Mislabeled Washing Machines.  However, persons who had already purchased these Mislabeled Washing Machines, including plaintiffs Charlene Dzielak and Shelley Baker, were given no notice of this agreement, or of the Mislabeled Washing Machines' noncompliance with the ENERGY STAR® standard.

27.     Plaintiffs Charlene Dzielak and Shelley Baker, and each purchaser of the Mislabeled Washing Machines, paid a price premium due to their Mislabeled Washing Machine's supposed energy efficiency and ENERGY STAR® qualification, and paid more money in additional energy costs to operate the Mislabeled Washing Machines than each would have paid if the washing machines had actually met the ENERGY STAR® standards as promised.

## CLASS ACTION ALLEGATIONS

28.     Plaintiffs seek to represent a class defined as all persons in the United States who purchased a Mislabeled Washing Machine (hereafter, the "Class").

29.     Plaintiffs also seek to represent a subclass of all Class members who purchased a Mislabeled Washing Machine in the State of New Jersey (hereafter, the "New Jersey Subclass").

30.     Plaintiffs also seek to represent a subclass of all Class members who purchased a Mislabeled Washing Machine in the State of California (hereafter, the "California Subclasses").

31.     Members of the Class and Subclasses are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class and Subclasses number in the tens of thousands.  The precise number of Class members and their identities are unknown to Plaintiffs at this time but will be determined through discovery.  Class members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third party retailers and vendors.

32.     Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

(a)     whether the Mislabeled Washing Machines were sold bearing false labels misrepresenting them as ENERGY STAR® compliant;

(b)     whether Class members suffered an ascertainable loss as a result of the Defendants' misrepresentations;

(c)     whether, as a result of Defendants' misconduct as alleged herein, Plaintiffs and Class members are entitled to restitution, injunctive, and/or monetary relief and, if so, the amount and nature of such relief.

33.     Plaintiffs' claims are typical of the claims of Class and Subclass members because Plaintiffs and all Class members purchased a Mislabeled Washing Machine bearing a false label misrepresenting it as ENERGY STAR® compliant, when in fact it was not.

34.     Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the Class members they seek to represent, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously.   The interests of Class members will be fairly and adequately protected by Plaintiffs and their counsel.

35.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs and Class members.   Each individual Class member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.   Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.   Individualized litigation also presents a potential for inconsistent or contradictory judgments.   In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.   Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

<u>COUNT I</u>
**(Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*)**

36.    Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

37.    Plaintiffs bring this Count I individually and on behalf of the members of the Class and Subclasses against all Defendants.

38.    The Mislabeled Washing Machines are consumer products as defined in 15 U.S.C. § 2301(1).

39.    Plaintiffs and Class members are consumers as defined in 15 U.S.C. § 2301(3).

40.    Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

41.    In connection with the sale of the Mislabeled Washing Machines, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the products met the energy efficiency requirements of the ENERGY STAR® program.

42.    In fact, the Mislabeled Washing Machines did not meet the energy efficiency requirements of the ENERGY STAR® program.

43.    By reason of Defendants' breach of warranties stating that the Mislabeled Washing Machines met the energy efficiency requirements of the ENERGY STAR® program, Defendants violated the statutory rights due Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and Class members.

44.    Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Mislabeled Washing Machines on the same terms if the true facts concerning their energy efficiency had been known;

(b) they paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified; (c) the Mislabeled Washing Machines did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Washing Machines.

**COUNT II**
**(Breach Of Express Warranty)**

45.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

46.     Plaintiffs bring this Count II individually and on behalf of the members of the Class and Subclasses against all Defendants.

47.     Defendants, as the designer, manufacturer, marketers, distributors, or sellers expressly warranted that the Mislabeled Washing Machines were fit for their intended purpose in that they would function properly as energy efficient washing machines within the parameters established by federal law and the ENERGY STAR® program.

48.     In fact, the Mislabeled Washing Machines were not fit for such purposes because they do not function properly as energy efficient washing machines within the parameters established by federal law and the ENERGY STAR® program.

49.     Plaintiffs and Class members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Mislabeled Washing Machines on the same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified; (c) the Mislabeled Washing Machines did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs as long as they continue to use the Mislabeled Washing Machines.

## COUNT III
### (Breach of Implied Warranty of Merchantability)

50. Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

51. Plaintiffs bring this Count III individually and on behalf of the members of the Class and Subclasses against all Defendants.

52. Defendants as the designer, manufacturer, marketers, distributors, and/or sellers impliedly warranted that the Mislabeled Washing Machines were fit for their intended purpose in that they would function properly as energy efficient washing machines within the parameters established by federal law and the ENERGY STAR® program.

53. Defendants breached the warranty implied in the contract for the sale of the Mislabeled Washing Machines in that the Mislabeled Washing Machines could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose in that they did not function properly as energy efficient washing machines within the parameters established by federal law and the ENERGY STAR® program.  As a result, Plaintiffs and Class members did not receive the goods as impliedly warranted by Defendants to be merchantable.

54. In reliance upon Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiffs and Class members purchased the Mislabeled Washing Machines for use as energy efficient washing machines within the parameters established by federal law and the ENERGY STAR® program.

55. The Mislabeled Washing Machines were not altered by Plaintiffs and Class members.  The Mislabeled Washing Machines were defective when they left the exclusive control of Defendants.

56.     Defendants knew the Mislabeled Washing Machines would be purchased and used without additional testing for energy efficiency by Plaintiffs and Class members.  The Mislabeled Washing Machines were defectively designed and unfit for their intended purpose, and Plaintiffs and Class members did not receive the goods as warranted.

57.     As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiffs and Class members have been injured and harmed because: (a) they would not have purchased the Mislabeled Washing Machines on the same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified; (c) the Mislabeled Washing Machines did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Washing Machines.

## COUNT IV
### (Unjust Enrichment)

58.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

59.     Plaintiffs bring this Count IV individually and on behalf of the members of the Class and Subclasses against all Defendants.

60.     "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences.  In all states, the focus of an unjust enrichment claim is whether the defendant was *unjustly* enriched.  At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff.  The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid*

*Contract Litig.*, 257 F.R.D. 46, 58 (D.N.J. 2009) (quoting *Powers v. Lycoming Engines*, 245 F.R.D. 226, 231 (E.D. Pa. 2007)).

61.     "Since there is no material conflict relating to the elements of unjust enrichment between the different jurisdictions from which class members will be drawn," *In re Mercedes-Benz Tele Aid Contract Litig.*, 257 F.R.D. at 58, New Jersey law applies to those claims.

62.     Plaintiffs and Class members conferred a benefit on Whirlpool, Lowe's, and Sears by purchasing the Mislabeled Washing Machines.

63.     Defendants have been unjustly enriched in retaining the revenues derived from Plaintiffs and Class members' purchases of the Mislabeled Washing Machines.  Retention under these circumstances is unjust and inequitable because Whirlpool, Lowe's, and Sears misrepresented that the Mislabeled Washing Machines complied with ENERGY STAR® standards, when in fact they did not, and misrepresented the energy efficiency of the Mislabeled Washing Machines, which caused injuries to Plaintiffs and Class members because (a) they would not have purchased the Mislabeled Washing Machines on the same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified; (c) the Mislabeled Washing Machines did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Washing Machines.

64.     Because Defendants' retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendants must pay restitution to Plaintiffs and the Class members for their unjust enrichment, as ordered by the Court.

## COUNT V
**(Violation of the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8-1, *et seq.*)**

65.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

66.     Plaintiffs bring this Count V individually and on behalf of the members of the Class and New Jersey Subclass against all Defendants.

67.     Defendants misrepresented that the Mislabeled Washing Machines complied with ENERGY STAR® standards when in fact they did not, and misrepresented the energy efficiency of the Mislabeled Washing Machines.

68.     Plaintiffs, Class members, and New Jersey Subclass members suffered an ascertainable loss caused by Defendants' misrepresentations because: (a) they would not have purchased the Mislabeled Washing Machines on the same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified; (c) the Mislabeled Washing Machines did not perform as promised; and (d) they have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Washing Machines.

## COUNT VI
**(Violation of the Consumers Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et. seq.*)**

69.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

70.     Plaintiffs bring this Count VI on behalf of the California Subclass under California law.

71.     CLRA § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or

she does not have." Defendants violated this provision by representing the Mislabeled Washing Machines as ENERGY STAR®-qualified and by misrepresenting the energy efficiency of the Mislabeled Washing Machines.

72.     CLRA § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another." Defendants violated this provision by representing the Mislabeled Washing Machines as ENERGY STAR®-qualified and by misrepresenting the energy efficiency of the Mislabeled Washing Machines.

73.     CLRA § 1770(a)(9) prohibits "[a]dvertising goods or services with intent not to sell them as advertised." Defendants violated this provision by representing the Mislabeled Washing Machines as ENERGY STAR®-qualified and by misrepresenting the energy efficiency of the Mislabeled Washing Machines.

74.     Plaintiffs and the California Subclass members suffered injuries caused by Defendants' misrepresentations because: (a) they would not have purchased the Mislabeled Washing Machines on the same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified; (c) the Mislabeled Washing Machines did not perform as promised; and (d) Plaintiffs and the California Subclass members have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Washing Machines.

75.     On November 11, 2011, prior to the filing of this Complaint, a CLRA notice letter was served on Defendants Whirlpool and Sears which complies in all respects with California Civil Code § 1782(a). Plaintiff Baker sent Defendants a letter *via* certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA and must correct, repair, replace or otherwise rectify the goods alleged to be in violation of § 1770. Defendants were

further advised that in the event that the relief requested has not been provided within thirty (30) days, Baker would file this Complaint.  A true and correct copy of Plaintiff Baker's CLRA letter is attached hereto as Exhibit A.

76.     Wherefore, Plaintiffs seek damages, restitution, and injunctive relief for this violation of the CLRA.

**COUNT VII**
**(Violation of the Unfair Competition Law, Bus. & Prof. Code §§ 17200 *et seq.*)**

77.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

78.     Plaintiffs bring this Count VII on behalf of the California Subclass under California law.

79.     Defendants are subject to the Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq.*  The UCL provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

80.     Defendants' conduct, described herein, violated the "unlawful" prong of the UCL by violating the EPCA, NECPA, NAECA, and regulations promulgated thereunder, governing the energy efficiency of washing machines.

81.     Defendants' conduct, described herein, violated the "unfair" prong of the UCL by violating the policy or spirit of the EPCA, NECPA, NAECA, and regulations promulgated thereunder, governing the energy efficiency of washing machines.

82.     Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL by representing the Mislabeled Washing Machines as ENERGY STAR®-qualified and by misrepresenting the energy efficiency of the Mislabeled Washing Machines.

83.     Plaintiffs and California Subclass members suffered lost money or property as a result of Defendants' UCL violations because: (a) they would not have purchased the Mislabeled Washing Machines on the same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified; (c) the Mislabeled Washing Machines did not perform as promised; and (d) they have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Washing Machines.

**COUNT VIII**
**(False Advertising)**
**(False Advertising Law, Business & Professions Code § 17500 *et seq*)**

84.     Plaintiffs repeat the allegations contained in the above paragraphs as if fully set forth herein.

85.     Plaintiffs bring this claim on behalf of the California Subclass under California law.

86.     California's False Advertising Law (*Bus. & Prof. Code* § 17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

87.     Defendants committed acts of false advertising, as defined by §17500, by using false and misleading statements to promote the sale of Mislabeled Washing Machines, as described above.

88.     Defendants knew or should have known, through the exercise of reasonable care that the statements were untrue and misleading.

89.     Defendants' actions in violation of § 17500 were false and misleading such that the general public is and was likely to be deceived.

90.     Plaintiffs and California Subclass members suffered lost money or property as a result of Defendants' FAL violations because: (a) they would not have purchased the Mislabeled Washing Machines on the same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified; (c) the Mislabeled Washing Machines did not perform as promised; and (d) they have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Washing Machines.

## COUNT IX
### (Violation of the Consumer Fraud Laws Of The Various States)

91.     Plaintiffs repeat the allegations contained in the foregoing paragraphs as if fully set forth herein.

92.     Plaintiffs bring this Count IV individually and on behalf of the members of the Class and Subclasses against all Defendants.

93.     By mislabeling and selling the Mislabeled Washing Machines as ENERGY STAR qualified when in fact they are not, Defendants have engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below.

94.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALA. CODE § 8.19-1, et seq.

95.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. CODE § 45.50.471, et seq.

96.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT. § 44-1522, et seq.

97.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ARK. CODE ANN. § 4-88-107, et seq.

98.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CAL. BUS. & PROF. CODE § 17200, et seq.

99.     Defendants have engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT. § 6-1-101, et seq.

100.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT. § 42-110b, et seq.

101.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, et seq.

102.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN. § 28-3901, et seq.

103.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. ANN. § 501.201, et seq.

104.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, et seq.

105.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT. § 480, et seq.

106.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE § 48-601, et seq.

107.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. 505/1, et seq.

108.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN. § 24-5-0.5-1, et seq.

109.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of IOWA CODE §714.16, et seq.

110.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KAN. STAT. § 50-623, et seq.

111.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN. § 367.110, et seq.

112.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT. § 51:1404, et seq.

113.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, et seq.

114.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE. ANN., COM. LAW § 13-101, et seq.

115.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN LAWS ch. 93A, §1, et seq.

116.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS § 445.901, et seq.

117.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT. § 8.31, et seq.

118.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MISS. CODE ANN. § 75-24-3, et seq.

119.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT. § 407.010, et seq.

120.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE ANN. § 30-14-101, et seq.

121.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT. § 59-1601, et seq.

122.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. 598.0903, et seq.

123.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN. § 358-A:1, et seq.

124.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN. § 57-12-1, et seq.

125.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GEN. BUS. LAW § 349, et seq.

126.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J.S.A. 56:8-1, et seq.

127.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT. § 75-1.1, et seq.

128.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE § 51-15-01, et seq.

129.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, et seq.

130.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT. § 646.605, et seq.

131.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT. § 201-1, et seq.

132.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, et seq.

133.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE § 39-5-10, et seq.

134.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, et seq.

135.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN. § 47-18-101, et seq.

136.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN. § 17.41, et seq.

137.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN. § 13-11-1, et seq.

138.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, et seq.

139.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, et seq.

140.    Defendants have engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE § 19.86.010, et seq.

141.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of W. VA. CODE § 46A-6-101, et seq.

142.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WIS. STAT. § 100.18, et seq.

143.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN. § 40-12-101, et seq.

144.    The acts, practices, misrepresentations and omissions by Defendants described above, and Defendants' dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes, because each of these statutes generally prohibits deceptive conduct in consumer transactions, and Defendants violated each of these statutes by representing the Mislabeled Washing Machines as ENERGY STAR®-qualified and by misrepresenting the energy efficiency of the Mislabeled Washing Machines.

145.    Plaintiffs and Class Members were injured as a direct and proximate result of Defendants' unfair, deceptive and/or unconscionable acts and practices, because: (a) they would not have purchased the Mislabeled Washing Machines on the same terms if the true facts concerning their energy efficiency had been known; (b) they paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified; (c) the Mislabeled Washing Machines did not perform as promised; and (d) Plaintiffs and Class members have paid and will continue to pay higher energy costs for as long as they continue to use the Mislabeled Washing Machines.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

a.    For an order certifying the nationwide Class and the Subclasses under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Subclasses and Plaintiffs' attorneys as Class Counsel to represent the Class and Subclass members;

b.    For an order declaring the Defendants' conduct violates the statutes referenced herein;

c.    For an order finding in favor of Plaintiffs, the nationwide Class, and the Subclasses on all counts asserted herein;

d.    For compensatory and punitive damages in amounts to be determined by the Court and/or jury;

e.    For prejudgment interest on all amounts awarded;

f.    For an order of restitution and all other forms of equitable monetary relief;

g.    For injunctive relief as pleaded or as the Court may deem proper; and

h.    For an order awarding Plaintiffs and the Class and Subclasses their reasonable attorneys' fees and expenses and costs of suit.

**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO**
Attorneys for Plaintiffs

Dated: January 4, 2012               By:___/s/ James E. Cecchi_____
                                          JAMES E. CECCHI

Antonio Vozzolo
Christopher Marlborough
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, New York  10017
(212) 983-9330

Scott A. Bursor
Joseph I. Marchese
**BURSOR & FISHER, P.A.**
369 Lexington Avenue, 10th Floor
New York, New York  10017
(212) 989-9113

**JURY DEMAND**

Plaintiffs hereby demand a trial by jury on all claims so triable in this action.

                                                    **CARELLA, BYRNE, CECCHI,**
                                                    **OLSTEIN, BRODY & AGNELLO**
                                                    Attorneys for Plaintiffs

Dated: January 4, 2012                      By:    /s/ James E. Cecchi
                                                        JAMES E. CECCHI


Antonio Vozzolo
Christopher Marlborough
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, New York  10017
(212) 983-9330

Scott A. Bursor
Joseph I. Marchese
**BURSOR & FISHER, P.A.**
369 Lexington Avenue, 10th Floor
New York, New York  10017
(212) 989-9113