## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLENE DZIELAK, SHELLEY BAKER, FRANCIS ANGELONE, BRIAN MAXWELL, JEFFERY MCLENNA, JEFFERY REID, KARI PARSONS, CHARLES BEYER, JONATHAN COHEN, and JENNIFER SCHRAMM on behalf of themselves and all others similarly situated, | Civil Action No. 12-CV-0089 (SRC)(MAS) |

Plaintiffs,

v.

WHIRLPOOL CORPORATION, LOWE'S COMPANIES, INC., SEARS HOLDINGS CORPORATION, THE HOME DEPOT, INC., FRY'S ELECTRONICS, INC., and APPLIANCE RECYCLING CENTERS OF AMERICA, INC.,

Defendants.

---

## PLAINTIFFS' MEMORANDUM OF LAW
## IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

---

James E. Cecchi
Lindsey H. Taylor
**CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO**
5 Becker Farm Road
Roseland, New Jersey  07068
(973) 994-1700

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................. 1

ARGUMENT .................................................................................................... 4

I.     THE RULE 12(b)(6) STANDARD ........................................................ 4

II.    PLAINTIFFS STATE CLAIMS FOR BREACH OF THE MAGNUSON-MOSS WARRANTY ACT (COUNT I) ................................. 4

III.   PLAINTIFFS STATE CLAIMS FOR BREACH OF EXPRESS WARRANTY (COUNT II) .................................................................... 7

     A.   Plaintiffs Allege The ENERGY STAR® Label Is An Express Written Warranty That Was Breached By Noncompliance With Energy Star Standards ......................................................... 7

     B.   Whirlpool's Privity Argument Is Wrong .............................. 10

     C.   Whirlpool's Notice Argument Is Wrong ............................. 12

IV.    PLAINTIFFS STATE CLAIMS FOR BREACH OF IMPLIED WARRANTY (COUNT III) ................................................................ 12

V.     PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT (COUNT IV) ....................................................................................... 13

VI.    PLAINTIFFS' COMPLAINT STATES A CLAIM FOR BREACH OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA") (COUNT V) ...... 14

     A.   Plaintiffs' Complaint Establishes Unlawful Conduct ......................... 14

     B.   Plaintiffs' Complaint Establishes An Ascertainable Loss And A Causal Relationship Between The Unlawful Conduct And That Loss ............. 17

VII.   PLAINTIFFS' COMPLAINT STATES CLAIMS FOR VIOLATION OF CALIFORNIA CONSUMER FRAUD STATUTES (COUNTS VI, VII, AND VIII) ............................................................................................ 19

     A.   Plaintiffs' Complaint Establishes A Claim For Violation Of The CLRA (Count VI) ................................................................ 19

     B.   Plaintiffs' Complaint Establishes A Claim For Violation Of The UCL (Count VII) ................................................................ 20

     C.   Plaintiffs' Complaint Establishes A Claim For Violation Of The FAL (Count VIII) ............................................................... 22

VIII.  PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE MICHIGAN MCPA (COUNT IX) ............................................... 23

IX.    PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE FLORIDA FDUPTA (COUNT X) .............................................. 24

X.     PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE OHIO OCSPA (COUNT XII) ................................................... 24

XI.    PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE INDIANA IDCSA (COUNT XIII) ............................................... 26

XII.   PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE TEXAS DTPA (COUNT XIV) .................................................... 27

XIII. PLAINTIFFS MAY ASSERT CLAIMS ON BEHALF OF ALL
PURCHASERS OF THE MVWC6ESWW0, MVWC6ESWW1, AND
MVWC7ESWW0 ................................................................................................. 28

CONCLUSION .................................................................................................................... 30

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ..................................................................................................... 4

*Bell Atlantic Corp. v. Twombly,*
    550 U.S. 544 (2007) ..................................................................................................... 4

*Borchardt v. Mako Marine Int'l., Inc.,*
    No. 08-61199-CIV-MARRA, 2011 U.S. Dist. LEXIS 55150 (S.D. Fla. May 23,
    2011) ............................................................................................................................. 5

*Boyd v. Homes of Legend, Inc.,*
    981 F. Supp. 1423 (M.D. Ala. 1997) ........................................................................... 5

*Cipolle v. Liggett Group, Inc.,*
    683 F. Supp. 1487 (D.N.J. 1988) ............................................................................... 10

*Cox v. Sears Roebuck & Co.,*
    138 N.J. 2 (1994) ........................................................................................................ 14

*Elias v. Ungar's Food Products, Inc.,*
    252 F.R.D. 233 (D.N.J. 2008) .................................................................................... 29

*Felix, et al. v. Kirby Vacuum Cleaner Co.,*
    No. 85L-80337, Court of Common Pleas, Licking County, Public Inspection File
    10000059 .................................................................................................................... 26

*Fieldstone Co. v. Briggs Plumbing Prod., Inc.,*
    54 Cal. App. 4th 357 (4th Dist. 1997) ....................................................................... 11

*Garcia v. M-F Athletic Co, Inc.,*
    No. 11-2430 WBS GGH, 2012 U.S. Dist. LEXIS 20411 (E.D. Cal. Feb. 17, 2012) ............. 11

*Gennari v. Weichert Co. Realtors,*
    148 N.J. 582 (1997) .................................................................................................... 14

*Gladden v. Cadillac Motor Car Div., General Motors Corp.,*
    83 N.J. 320 (1980) ........................................................................................................ 9

*Green v. Green Mountain Coffee Roasters, Inc.,*
    No. 11-2067 (SDW) (MCA), 2011 U.S. Dist. Lexis 146059 (D.N.J. December 20,
    2011) ........................................................................................................................... 30

*Henningsen v. Bloomfield Motors, Inc.*,
   32 N.J. 358 (1960) ........................................................................................... 10

*In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*,
   No. 03-4558, 2008 U.S. Dist. LEXIS 73690 (D.N.J. Sept. 3, 2008) ........................................ 8

*In re Indus. Diamonds Antitrust Litig.*,
   167 F.R.D. 374 (S.D.N.Y. 1996) .......................................................................... 29

*In re McDonald's French Fries Litig.*,
   503 F. Supp. 2d 953 (N.D. Ill. 2007) .................................................................... 10

*In re Mercedes-Benz Tele-Aid Contract Litig.*,
   267 F.R.D. 113 (D.N.J. 2010) ............................................................................ 14

*Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*,
   192 N.J. 372 (2007) ...................................................................................... 16

*Johansson v. Central Garden & Pet Co.*,
   804 F. Supp. 2d 257 (D.N.J. 2011) .................................................................... 5, 6

*Knipe v. Smithkline Beecham*,
   583 F. Supp. 2d 602 (E.D. Pa. 2008) ..................................................................... 9

*Kordel v. U.S.*,
   335 U.S. 345 (1948) ...................................................................................... 16

*L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*,
   9 F.3d 561 (7th Cir. 1993) ............................................................................ 9, 10

*Marcus v. BMW of N. Am., , Civ. Action No. 08-5859 (KSH)*,
   2010 U.S. Dist. Lexis 122908 (D.N.J. November 19, 2010) ................................................ 29

*Marine Midland Bank v. Carroll*,
   98 A.D.2d 516 (N.Y. App. Div. 1984) .................................................................... 10

*Medrazo v. Honda of N. Hollywood*,
   166 Cal App. 4th 89 (2008) .............................................................................. 29

*Murphy v. Mallard Coach Co.*,
   179 A.D.2d 187 (N.Y. App. Div. 1992) ................................................................... 10

*Nartron Corp. v. Hamilton/Avnet Elecs. of Arizona, Inc.*,
   No. 5:90-CV-60, 1991 U.S. Dist. LEXIS 19238 (W.D. Mich. Nov. 1, 1991) ................................. 12

*Nelson v. Xacta 3000, Inc.*,
   No. 08-5426 (MLC), 2010 U.S. Dist. Lexis 47128 (D.N.J. May 12, 2010) .................................. 18

*New Hope Pipe Liners, LLC v. Composites One, LLC*,
   No. 09-3222, 2009 U.S. Dist. LEXIS 111217 (D.N.J. Nov. 25, 2009) .....................................7

*Palmeri v. LG Elecs. USA*,
   No. 07-5706, 2008 U.S. Dist. LEXIS 58374 (D.N.J. July 30, 2008) ...............................13, 14

*Paramount Farms v. Venitlex*,
   735 F. Supp. 2d 1189 (E.D. Cal. 2010) ..................................................................................11

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008) ...............................................................................................4, 30

*Prairie Prod., Inc. v. Agchem Div.-Pennwalt Corp.*,
   514 N.E.2d 1299 (Ind. Ct. App. 1987) ..................................................................................11

*Rivera v. Bio Eng'r Supplements & Nutrition, Inc.*,
   Case No. SACV 07-1306 JVS, 2008 U.S. Dist. LEXIS 95083 (C.D. Cal.
   November 13, 2008) ................................................................................................................29

*Salinas v. Gary Pools, Inc.*,
   31 S.W.3d 333 (Tex. App. 2000) ...........................................................................................27

*Sandser v. City of Fresno*,
   No. 05-0469 AWI SMS, 2006 U.S. Dist. LEXIS 48582 (E.D. Cal. July 3, 2006) .................11

*Semerenko v. Cendant Corp.*,
   223 F.3d 165 (3d Cir. 2000) .....................................................................................................4

*Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*,
   890 F.2d 108 (9th Cir. 1989) ....................................................................................................9

*Smajlaj v. Campbell Soup Co.*,
   2011 WL 1086764 (D.N.J. 2011) ...........................................................................................14

*Smith v. Wrigley Jr. Co.*,
   663 F. Supp. 2d 1336 (S.D. Fla. 2009) ..................................................................................10

*State ex rel. Brown v. Lyons*,
   No. A-742156, Court of Common Pleas, Hamilton County, Public Inspection File
   100000304 .............................................................................................................................26

*State ex rel. Celebrezze v. Moore, et al.*,
   No. 86cv-02-1297, Court of Common Pleas, Franklin County, Public Inspection
   File 100000851 ......................................................................................................................25

*Thomas Horinek v. European Health Concepts, Inc.*,
   No. 02CVE02764, Municipal Court, Lorain County, Public Inspection File
   10002143 ...............................................................................................................................26

*Thompson Farms, Inc. v. Corno Feed Prods., Div. of Nat'l Oats Co.*,
    173 Ind. App. 682 (Ind. Ct. App. 1977) ................................................... 12

*Torres-Hernandez v. CVT Prepaid Solutions, Inc.*,
    No. 3:08-cv-1057-FLW, 2008 U.S. Dist. Lexis 105413 (D.N.J. Dec. 9, 2008) ..................... 18

*Union Ink Co., Inc. v. AT&T Corp.*,
    352 N.J. Super. 617 (App. Div. 2002) ...................................................... 8

*Viking Yacht Co. v. Composites One LLC*,
    496 F.Supp.2d 462 (D.N.J. 2007) ............................................................ 9

STATUTES

15 U.S.C. § 2301(1) ........................................................................... 23

15 U.S.C. § 2301(6) ........................................................................ 5, 6

15 U.S.C. § 2301(6)(A) ........................................................................ 6

15 U.S.C. § 2301(7) ........................................................................... 5

42 U.S.C.S. § 6294a .......................................................................... 21

Cal. Com. Code § 2313 ......................................................................... 7

Energy Policy and Conservation Act of 1975 ("ECPA"), 42 U.S.C. § 6291 .............................. 20

Fla. Stat. § 672.313 .......................................................................... 7

Mich. Comp. Laws § 440.2313 ................................................................... 7

Mich. Comp. Laws § 445.903(c) and § 445.903(e) ................................................ 23

Mich. Comp. Laws § 455.903(s) and (bb) ........................................................ 24

N.J.S.A. 56:8-1(d) ........................................................................... 15

N.J.S.A. § 12A:2-313 ....................................................................... 7, 8

N.J.S.A. § 12A:2-314 ...................................................................... 12, 13

N.J.S.A. § 56:8-4 ............................................................................ 15

National Appliance Energy Conservation Act of 1987 ("NAECA") ............................... 20, 21, 24

National Energy Conservation Policy Act of 1978 ("NECPA") .................................. 20, 21, 24

Ohio U.C.C. § 1302.26 ......................................................................... 7

Uniform Commercial Code ("U.C.C.") § 2-313 .......................................................................7

Va. Code Ann. § 8.2-313 .....................................................................................................7

**OTHER AUTHORITIES**

21 C.F.R. § 430.......................................................................................................................21

21 C.F.R. § 430.23.................................................................................................................21

N.J.A.C.12:45A-9.2(a)(10)....................................................................................................15

N.J.A.C. 13:45A-9.1..............................................................................................................15

F.R.C.P. 9(b)..........................................................................................................................20

F.R.C.P. 12(b)(6)..............................................................................................................4, 30

## INTRODUCTION

The facts of this case are that the Defendants promoted certain Maytag washing machines ("Mislabeled Washing Machines")[1] as ENERGY STAR® qualified, when in fact they do <u>not</u> meet the standards of the ENERGY STAR® program.  This is the fundamental allegation of the Plaintiffs' Complaint.  It is confirmed by two rounds of independent testing administered by the United States Department of Energy ("DOE").  *See* Complaint ¶¶ 39-42.[2]  The Plaintiffs, purchasers of Mislabeled Washing Machines, allege they:  (i) saw and relied on the ENERGY STAR® labels affixed to the Mislabeled Washing Machines, *id.* ¶¶ 29-38; (ii) understood those labels as a representation and warranty that these machines met the standards of the ENERGY STAR® program, *id.*; (iii) would not have purchased these machines if they had known they did not meet that standard, *id.*; and (iv) as a result, suffered damages because they paid a price premium for a purportedly energy efficient appliance, "and will pay higher energy bills every month – month after month and year after year – for as long as the washing machine remains in use," *id.* ¶ 3.[3]

Whirlpool's Motion to Dismiss largely ignores or obfuscates these basic facts.  But it also includes two blatant falsehoods.  First, Whirlpool contends "Plaintiffs … do not and cannot allege ... that the EPA or DOE ever revoked Whirlpool's authorization to use the ENERGY STAR mark, or that the EPA disqualified the Washers from the ENERGY STAR program."

---

[1]   The Mislabeled Washing Machines include model numbers MVWC6ESWW0, MVWC6ESWW1, and MVWC7ESWW0.

[2]   Plaintiffs' First Amended Consolidated Complaint (Doc. 29) is referenced herein as "Complaint."

[3]   Whirlpool's internal survey data show that 49% of consumers "would consider paying more money for an appliance if it would reduce their utility bills over time."  12/27/11 Whirlpool press release, Bartlett Cert. Exh. A.

Whirlpool Br. at 3.[4]  That is grossly misleading.  Plaintiffs did not allege that the United States Environmental Protection Agency ("EPA") disqualified the Mislabeled Washing Machines because it had not done so as of the filing date of the Complaint.  EPA did, however, disqualify them on May 7, 2012, eighteen days before Whirlpool's brief was filed.  *See* Plaintiffs' Request for Judicial Notice filed herewith ("RJN") Exh. A (official list of "Non-Lighting Products Disqualified from the ENERGY STAR® Program," listing the Maytag MVWC6ESWW1, disqualified on 5/7/2012).

Second, Whirlpool contends that "the ENERGY STAR logo, on its own, makes no specific representation regarding relative energy efficiency or use."  Whirlpool Br. at 33.  That statement contradicts the allegations of the Complaint and the express provisions of federal law, under which the ENERGY STAR® logo is used to identify "products … that meet the highest energy conservation standards," which for washing machines requires them to be "at least 37% more energy efficient than the minimum energy efficiency standards mandated by federal law."  Complaint ¶ 26, *quoting* 42 U.S.C.S. § 6294a.  Whirlpool's statement also contradicts the very purpose of the ENERGY STAR® program as articulated by the government agencies that administer it.  Indeed, the DOE and EPA specifically advise consumers:  "If looking for new household products, look for ones that have earned the ENERGY STAR.  They meet strict energy efficiency guidelines set by the EPA and U.S. Department of Energy."  *See* RJN Exh. B ("About ENERGY STAR" page from *http://www.energystar.gov*).  These agencies have also found that "[s]ubstantial portions of U.S. households in the surveyed population recognize, understand, and are influenced by the ENERGY STAR label."  National Awareness Of

---

[4] Defendants Whirlpool Corporation, Lowe's Companies, Inc., Sears Holdings Corporation, and Fry's Electronics, Inc. jointly moved to dismiss (Doc. 37-2).  For ease of reference they are referred to collectively as "Whirlpool."  Defendant Home Depot U.S.A. Inc. filed a separate motion to dismiss, Doc. 38-1, which we address in a separate opposition filed herewith.

ENERGY STAR® For 2011, Analysis Of CEE Household Survey, RJN Exh. C at ES-3; *see also id.* at ES-1 (finding 85% of households had at least a general understanding of the label's purpose, including 75% that had a "high understanding"); *id.* at ES-2 (finding the label influenced the purchasing decisions of 88% of households that recognized it, including 76% whose purchase decisions were influenced "very much" or "somewhat").[5] These government findings are consistent with Plaintiffs' allegations that they understood the ENERGY STAR® label "as a representation and warranty … that the machine met the standards of energy efficiency established by the ENERGY STAR® program." Complaint ¶¶ 29-38.[6]

Plaintiffs allege facts that are simple, clear, and powerful. They are confirmed by the independent findings of two government agencies. When the basic facts of this case are understood, defendants' arguments for dismissal must be rejected. When the facts are that the defendants put ENERGY STAR® labels on refrigerators that do not meet the ENERGY STAR® standard, it is difficult to imagine how the complaint could fail to state a claim.

---

[5] Whirlpool's own internal survey data includes similar findings. *See* 3/14/11 Whirlpool Press Release, Bartlett Cert. Exh. B ("According to a Whirlpool Corporation survey … energy efficiency is more important than ever in the purchase decision of consumers shopping for major appliances. The majority of U.S. consumers (72%) said they actively look for the ENERGY STAR® label when making purchase decisions.").

[6] Whirlpool's own statements confirm that it too understands the ENERGY STAR® label as a "promise" of "energy savings," and "energy efficiency." *See, e.g.*, 10/23/09 Whirlpool Press Release, Bartlett Cert. Exh. C ("'We're pleased that DOE is stepping up enforcement as these actions are important for several reasons,' said Katrina Helmkamp, senior vice president, product business teams, Whirlpool Corporation. 'They will help ensure manufacturers of appliances are held accountable to deliver *the energy savings they promise.* In turn, consumers will be able to confidently use the Energy Guide label to make energy performance comparisons among brands while shopping, and to attain in real world use *the energy efficiency promised when they purchased the appliance.*'") (emphasis added).

<u>**ARGUMENT**</u>

**I.      THE RULE 12(b)(6) STANDARD**

In addressing a motion to dismiss a complaint under Rule 12(b)(6), the Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008). At this stage, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 663 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 556 (2007)). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 545. Ultimately, the question is whether the claimant can prove a set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail. *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).

**II.     PLAINTIFFS STATE CLAIMS FOR BREACH OF THE MAGNUSON-MOSS WARRANTY ACT (COUNT I)**

Whirlpool's discussion of Plaintiff's Magnuson-Moss Warranty Act ("MMWA") claim (Count I), is relegated to page 38 of their 40-page brief. It comprises only six lines of text:

> Plaintiffs allege Defendants violated the MMWA. (Compl. ¶¶ 62-70.) 'A claim under the MMWA relies on the underlying state law claim[s].' *Johansson v. Central Garden & Pet Co.*, 804 F. Supp. 2d 257, 265 (D.N.J. 2011). Plaintiffs' MMWA claim must be dismissed because they failed to state claims for breach of an express or implied warranty under the laws of any of their respective home states. (*See* Argument § IV, *supra*); *see also Johansson*, 804 F. Supp. 2d at 265.

Whirlpool's cursory treatment of the MMWA claim is fundamentally wrong because it overlooks an important distinction between the MMWA's standards for express written warranty

claims, on the one hand, and implied warranty claims, on the other.  MMWA claims concerning implied warranties are dependent on state law, but MMWA claims based on an express written warranty, such as the claims in this case, are not dependent on state law.  *Compare* 15 U.S.C. §15 U.S.C. § 2301(7) (defining an "implied warranty" as "an implied warranty arising under State law") *with* 15 U.S.C. § 2301(6) (defining the terms of a "written warranty," with no mention of state law).  Where an MMWA claim concerns an express written warranty, it is independent of state law, and the protections of the MMWA are often broader than state law protections.  *See, e.g., Borchardt v. Mako Marine Int'l., Inc.*, No. 08-61199-CIV-MARRA, 2011 U.S. Dist. LEXIS 55150, at *15 (S.D. Fla. May 23, 2011) (denying motion to dismiss MMWA claim based on an express written warranty, stating "the plaintiffs' MMWA claim does not fail simply because their state law express warranty claims fail"); *see also Boyd v. Homes of Legend, Inc.*, 981 F. Supp. 1423, 1439-40 (M.D. Ala. 1997) ("Congress's overall purpose in creating the Act was to protect consumers by prescribing new, detailed standards for written warranties that supplemented existing state law ... By contrast, Congress's intentions regarding non-written [express] and implied warranties were far less ambitious.  Rather than significantly revamp or supplement the treatment of implied warranties under existing state law, Congress opted to maintain the status quo.").

Whirlpool's citation to *Johansson*, Whirlpool Br. at 38, reveals this fundamental error.  That case concerned only an *implied* warranty claim.  *See Johansson*, 804 F.Supp.2d at 265 ("Plaintiffs have pleaded their underlying *implied* warranty claim under California state law.  Since the Court has dismissed Plaintiffs' *implied* warranty claim without prejudice for lack of privity, Plaintiffs' MMWA claim is likewise dismissed without prejudice.") (underlining added).

*Johansson* says nothing about the scope of the MMWA's protections where an express written warranty is at issue.

The Complaint alleges every element of an express written warranty claim under the MMWA.  The statute defines a "written warranty" as "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time ... which written affirmation, promise, or undertaking becomes part of the basis of the bargain between a supplier and a buyer for purposes other than resale of such product."  15 U.S.C. § 2301(6)(A).  Plaintiffs allege Defendants created a written warranty by affixing the ENERGY STAR® logo to the Mislabeled Washing Machines.  *See* Complaint ¶ 67 ("Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), which warranted that the products met the energy efficiency requirements of the ENERGY STAR® program."); *see also* Complaint ¶¶ 29-38 (alleging that each washing machine Plaintiffs' purchased "was marked with the ENERGY STAR® logo in two places, on the lower right-hand corner of the Energy Guide label affixed to the washing machine, and also directly affixed to the front of the washing machine").  Each Plaintiff alleges he or she saw the ENERGY STAR® labels prior to the purchase, "understood them as a representation and warranty by both the manufacturer (which created and affixed the labels) and the retailer (which displayed the labels) that the machine met the standards of energy efficiency established by the ENERGY STAR® program," relied on these labels as "part of the basis of the bargain," and would not have purchased the machine if he or she knew it was not ENERGY STAR® compliant.  Complaint ¶¶ 29-38.  Plaintiffs also allege the Mislabeled Washing Machines do not conform to the written warranty because they failed

two rounds of DOE-administered testing, which showed they "did not meet ENERGY STAR®
standards." *Id.* ¶¶ 39, 42.  On May 7, 2012, after Plaintiffs filed their Complaint, the EPA
confirmed these allegations by formally disqualifying the Maytag MVWC6ESWW1 from the
ENERGY STAR® program.  *See* RJN Exh. A.  Every statutory element is pleaded, Complaint
¶¶ 62-69, including damages and causation, *id.* ¶ 70.  These allegations are a textbook example
of how to properly plead a claim for breach of an express written warranty under the MMWA.

### III.     PLAINTIFFS STATE CLAIMS FOR BREACH OF EXPRESS WARRANTY (COUNT II)

#### A.     Plaintiffs Allege The ENERGY STAR® Label Is An Express Written Warranty That Was Breached By Noncompliance With Energy Star Standards

Whirlpool contends that "no choice of law analysis" is required for purposes of the state
law express warranty claims, Whirlpool Br. at 32 n.10, and Plaintiffs agree.  Each Plaintiff's
purchase was made in a state that has adopted the Uniform Commercial Code provisions for
warranty claims.  *Compare* U.C.C. § 2-313, *with* N.J.S.A. § 12A:2-313; Cal. Com. Code § 2313;
Fla. Stat. § 672.313; Mich. Comp. Laws § 440.2313; Ohio U.C.C. § 1302.26; Va. Code Ann. §
8.2-313; Tex. Bus. & Com. Code Ann. § 2.313.  These laws impose the same three elements for
a breach of express warranty.  *See New Hope Pipe Liners, LLC v. Composites One, LLC*, No. 09-
3222, 2009 U.S. Dist. LEXIS 111217, at *14-15 (D.N.J. Nov. 25, 2009) (indicating that in order
to plead a claim for breach of express warranty, a plaintiff must set forth facts sufficient to
support a plausible inference that: (1) "Defendant(s) made an affirmation, promise, or
description;" (2) "that became part of the basis of the bargain;" and (3) "the goods ultimately did
not conform to the affirmation, promise, or description;" *see also* Whirlpool Br. at 32 (listing
these same 3 elements).

With respect to the first element, Whirlpool disputes that the ENERGY STAR® label is a warranty, because "the ENERGY STAR logo, on its own, makes no specific representation regarding relative energy efficiency or use." Whirlpool Br. at 33. As an initial matter, "whether a given statement constitutes an express warranty is normally a question of fact for the jury." *In re Ford Motor Co. E-350 Van Prods. Liab. Litig.*, No. 03-4558, 2008 U.S. Dist. LEXIS 73690, at *13-14 (D.N.J. Sept. 3, 2008) (citing cases); *see also Union Ink Co., Inc. v. AT&T Corp.*, 352 N.J. Super. 617, 645 (App. Div. 2002) ("Whether the advertisements contained material misstatements of fact, or were merely puffing, as alleged by defendants, presents a question to be determined by the trier of fact."). Thus, this issue cannot be resolved on Defendants' Motion to Dismiss. *See In Re Ford Motor Co.*, 2008 U.S. Dist. LEXIS 73690, at *14-15.

Regardless, that argument contradicts the allegations of the Complaint and the federal statutes and regulations defining the terms of the ENERGY STAR® program. *See* Complaint ¶ 26 (alleging the ENERGY STAR® logo is used to identify "products … that meet the highest energy conservation standards," which for washing machines requires them to be "at least 37% more energy efficient than the minimum energy efficiency standards mandated by federal law"), *quoting* 42 U.S.C. § 6294a. Under New Jersey law, an express warranty can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain," or "[a]ny description of the goods which is made part of the basis of the bargain." N.J.S.A. § 12A:2-313. It is not necessary to "use formal words such as 'warrant' or 'guarantee'" to create an express warranty. N.J.S.A. § 12A:2-313. In practice, this means "[a] statement can amount to a warranty ... if it could fairly be understood ... to constitute an affirmation or representation that the [product] possess[s] a certain quality or

8

capacity relating to future performance." *L.S. Heath & Son, Inc. v. AT&T Info. Sys., Inc.*, 9 F.3d 561, 570 (7th Cir. 1993) (citations omitted) (applying New Jersey law).

Whirlpool also contends "the terms of the one-year 'Limited Warranty' that accompanied Plaintiffs' Washers demonstrates that Defendants did not warrant the Washers' energy efficiency."   Whirlpool Br. at 33.   That argument is clearly wrong, because "a warranty disclaimer inconsistent with an express warranty is inoperative." *L.S. Heath & Son, Inc.*, 9 F.3d at 570; *accord Gladden v. Cadillac Motor Car Div., General Motors Corp.*, 83 N.J. 320, 330 (1980) ("The complete exclusion of express warranties is strongly disfavored in the UCC."); *Sierra Diesel Injection Serv., Inc. v. Burroughs Corp.*, 890 F.2d 108 (9th Cir. 1989) (finding that a disclaimer of warranties in a "printed form contract was ineffective to void [prior] express warranties" where seller was alleged to have warranted that a computer would "put your inventory, receivables, and invoicing under complete control").

Whirlpool's brief does not address the second element, which requires the plaintiff to allege the warranty became part of the basis of the bargain.   Here, each Plaintiff alleges he or she saw and relied on the ENERGY STAR® labels, understood those labels as a representation and warranty that the Mislabeled Washing Machines met the standards of the ENERGY STAR® program, *id.*, and that the labels were part of the "basis of the bargain" because he or she would not have purchased the machine if he or she had known it did not meet the ENERGY STAR® standard.   Complaint ¶¶ 29-38.   Such allegations sufficiently allege an express warranty because they constitute an inducement to the Plaintiffs to use the Defendants' products. *See Knipe v. Smithkline Beecham*, 583 F. Supp. 2d 602, 625 (E.D. Pa. 2008); *Viking Yacht Co. v. Composites One LLC*, 496 F.Supp.2d 462, 469-470 (D.N.J. 2007) (express warranty sufficiently pleaded where plaintiffs alleged that defendant's language in product bulletin induced them to use

product); *Henningsen v. Bloomfield Motors, Inc.,* 32 N.J. 358, 371 (1960) ("Under the broad terms of the Uniform Sale of Goods Law any affirmation of fact relating to the goods is an express warranty if the natural tendency of the statement is to induce the buyer to make the purchase.") (citation omitted).

With respect to the third element, that the goods ultimately did not conform to the affirmation, promise, or description, the Complaint certainly makes that allegation. *See id.* ¶ 1 ("In fact, the Mislabeled Washing Machines do *not* meet the Energy Star® standards."); *id.* ¶¶ 39, 42 (alleging the machines failed two rounds of DOE testing). And these allegations have now been confirmed by EPA's disqualification of the MVWC6ESWW1. *See* RJN Exh. A.

These allegations, which under New Jersey law must be taken as true and construed in Plaintiffs' favor, are sufficient to state a claim that the label is an express warranty.[7]

**B.    Whirlpool's Privity Argument Is Wrong**

Whirlpool erroneously contends that the express warranty claims of Baker, Maxwell, Beyer, and McLenna fail for lack of privity under the laws of California, Indiana and Michigan.

---

[7] *See also L.S. Heath & Son, Inc.*, 9 F.3d at 570 (finding AT&T created an express warranty when it represented that its "completely integated [sic] data processing and voice/data communications network [will] satisf[y] all your aforementioned objectives" and refusing to enforce a subsequent disclaimer similar to Whirlpool's Limited Warranty); *Cipollone v. Liggett Group, Inc.*, 683 F. Supp. 1487, 1490-91, 1497 (D.N.J. 1988) (holding advertisements concerning the health effects of cigarettes created an express warranty); *rev'd on other grounds*, 893 F.2d 541, 574 (3d Cir. 1990) ("The seller may be liable if its representation regarding the goods takes the form of newspaper, magazine, radio or television advertisements."); *In re McDonald's French Fries Litig.*, 503 F. Supp. 2d 953, 958 (N.D. Ill. 2007) (holding representations made on a corporate website regarding the nutritional content of McDonald's potato products were written warranties); *Smith v. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1341-43 (S.D. Fla. 2009) (holding representations on packaging concerning chewing gum's ability to kill germs was a written warranty); *Murphy v. Mallard Coach Co.*, 179 A.D.2d 187, 193-94 (N.Y. App. Div. 1992) (holding an "inspection checklist" issued by a motor home retailer was a written warranty); *Marine Midland Bank v. Carroll*, 98 A.D.2d 516, 520 (N.Y. App. Div. 1984) (finding that an "inspection form" of a motor home was a written warranty under the Magnuson-Moss Act).

Whirlpool Br. at 34. That argument is wrong because privity is not a required element to assert a breach of express warranty where the warranty appears on the product's labels or advertising. *See Paramount Farms v. Venitlex*, 735 F. Supp. 2d 1189, 1215-16 (E.D. Cal. 2010) ("Privity is generally not required for liability on an express warranty because it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies."). *See also Sandser v. City of Fresno*, No. 05-0469 AWI SMS, 2006 U.S. Dist. LEXIS 48582, at *62 (E.D. Cal. July 3, 2006) ("There are exceptions to the privity requirement, such as: … reliance on the manufacturer's written representations in labels or advertising materials…"); *Prairie Prod., Inc. v. Agchem Div.-Pennwalt Corp.*, 514 N.E.2d 1299, 1302-03 (Ind. Ct. App. 1987) (reversing summary judgment grant on purchasers' express warranty claim despite absence of privity); *Fieldstone Co. v. Briggs Plumbing Prod., Inc.*, 54 Cal. App. 4th 357, 369 n. 10 (4th Dist. 1997) ("[T]here is an exception where plaintiff's decision to purchase the product was made in reliance on the manufacturers' written representations in labels or advertising materials.") (citing *Seely v. White Motor Co.*, 63 Cal. 2d 9, 14 (1965)).

Defendants reliance on *Garcia v. M-F Athletic Co, Inc.*, No. 11-2430 WBS GGH, 2012 U.S. Dist. LEXIS 20411, at *4 (E.D. Cal. Feb. 17, 2012), cited at page 34 of Whirlpool's brief, is misleading. In *Garcia*, the court cites to *Fieldstone,* noting that "[a]s a general rule, privity of contract is a required element of [a] … breach of warranty cause of action," but *Fieldstone* specifically notes that this does not apply where, as here, the claimed warranty appears on the product packaging and advertising.[8]

---

[8] In any event, in Indiana, California and Michigan, the requirement of privity is satisfied where a consumer purchases from an agent of the manufacturer. *See Paramount Farms, Inc. v. Ventilex B.V.*, 735 F. Supp. 2d 1189, 1217-1218 (E.D. Cal. 2010) ("The record raises factual issues as

C.     __Whirlpool's Notice Argument Is Wrong__

Whirlpool contends that 8 of the 10 plaintiffs' warranty claims should be dismissed because "they do not allege they provided Defendants with notice of the alleged defect." Whirlpool Br. at 37-38. That argument is wrong. Two of the plaintiffs, Shelly Baker and Brian Maxwell, provided such notice on November 11, 2011 and November 16, 2011, respectively, and those notice letters are attached to the Complaint. *See* Complaint Exhs. A & B. Both of those letters were provided on behalf of "all other persons similarly situated," which includes the next eight plaintiffs that joined the lawsuit. Two letters is notice enough. Ten is overkill.

## IV.    PLAINTIFFS STATE CLAIMS FOR BREACH OF IMPLIED WARRANTY (COUNT III)

The implied warranty of merchantability requires goods to "(a) pass without objection in the trade under the contract description; and (b) in the case of fungible goods, are of fair average quality within the description; and (c) are fit for the ordinary purposes for which such goods are used; ... and (e) are adequately contained, packaged, and labeled as the agreement may require; and (f) conform to the promises or affirmations of fact made on the container or label if any." N.J.S.A. § 12A:2-314.

Defendants argue that Plaintiffs' implied warranty claim fails because "the ordinary purpose of a washing machine is to clean clothes." Whirlpool Br. at 36. That may be true, but Whirlpool does not address any of the additional criteria of merchantability set forth in N.J.S.A.

---

to vertical privity to prevent summary judgment … on the breach of implied warranty claims."); *Nartron Corp. v. Hamilton/Avnet Elecs. of Arizona, Inc.*, No. 5:90-CV-60, 1991 U.S. Dist. LEXIS 19238 (W.D. Mich. Nov. 1, 1991) ("If Avnet were acting as ITT's agent in connection with the sale of the diodes, then privity of contract would exist between ITT and plaintiff. The resolution of whether an agency relationship exists is a question of fact that should be resolved by the jury."); *Thompson Farms, Inc. v. Corno Feed Prods., Div. of Nat'l Oats Co.*, 173 Ind. App. 682, 711 (Ind. Ct. App. 1977) ("Corno was the seller of the hog houses to Thompson Farms, through its agent Triple T"). Here, Plaintiffs specifically allege the retailers acted "as the agent of Whirlpool." Complaint ¶¶ 29-38.

§ 12A:2-314.  The Mislabeled Washing Machines do not "pass without objection in the trade under the contract description" because they are described as Energy Star compliant when, in fact, they are not.  Likewise, they do not "conform to promises or affirmations of fact made on the container or label" because they do not meet ENERGY STAR® standards, nor are they are "adequately contained, packaged, and labeled" because their ENERGY STAR® labels are false.  *Id.*  The allegations are thus sufficient to state claims for breach of the implied warranty of merchantability.[9]

## V.   PLAINTIFFS STATE CLAIMS FOR UNJUST ENRICHMENT (COUNT IV)[10]

Whirlpool contends that Plaintiffs "cannot maintain their claim for unjust enrichment against Whirlpool, because they did not confer a benefit on Whirlpool."  Whirlpool Br. at 39-40.  That argument is wrong on the facts and wrong on the law.  Plaintiffs specifically allege they conferred a benefit on Defendants by purchasing the Mislabeled Washing Machines.  Complaint ¶ 88.  Plaintiffs also allege they "paid a price premium due to the mislabeling of the washing machines as ENERGY STAR®-qualified."  *Id.* ¶ 89.  Furthermore, Plaintiffs allege that "Defendants have been unjustly enriched in retaining the revenues derived from Class members' purchases of the Mislabeled Washing Machines."  *Id.*  Similar allegations were held to state a claim for unjust enrichment on behalf of a class of purchasers of LG refrigerators in *Palmeri v. LG Elecs. USA*, No. 07-5706, 2008 U.S. Dist. LEXIS 58374 (D.N.J. July 30, 2008).

---

[9] Whirlpool contends the implied warranty claims of four plaintiffs fail for lack of privity under the laws of California, Florida and Ohio.  Whirlpool Br. at 37.  That argument is wrong for the reasons stated in Part III.B, *supra*.

[10] Whirlpool contends that "courts within the District of New Jersey, including this Court, have concluded that no conflict exists between the unjust enrichment laws of the 50 states."  Whirlpool Br. at 32 n. 10.  Plaintiffs agree.  Thus the unjust enrichment claims are analyzed under New Jersey law.

Defendants' argument that the purchase was made through a retailer is of no merit, particularly where the retailer is a co-defendant subject to joint and several liability on the claim. Whirlpool Br. at 39-40.  Whirlpool also contends that Plaintiffs "do not allege facts indicating they expected remuneration from Defendants at the time of their purchase."  Whirlpool Br. at 39. *Palmieri* recognized that issue as well.  *See Palmeri*, 2008 U.S. Dist. LEXIS 58374, at *16 ("The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant....").  That requirement is satisfied here by the allegation that Defendants were unjustly enriched because Plaintiffs did not, in fact, receive an ENERGY STAR®-qualified washing machine as remuneration for their payment.

## VI.   PLAINTIFFS' COMPLAINT STATES A CLAIM FOR BREACH OF THE NEW JERSEY CONSUMER FRAUD ACT ("NJCFA") (COUNT V)

Establishing a claim under the NJCFA requires: (1) unlawful conduct; (2) an ascertainable loss; and (3) a causal relationship between the unlawful conduct and loss.  *In re Mercedes-Benz Tele-Aid Contract Litig.*, 267 F.R.D. 113, 130 (D.N.J. 2010).  Plaintiffs' Complaint establishes all three elements.

### A.   Plaintiffs' Complaint Establishes Unlawful Conduct

Unlawful conduct can be established by defendants' (i) affirmative acts, (ii) knowing omissions of material facts, or (iii) violation of regulations promulgated under the NJCFA. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 604 (1997); *Smajlaj v. Campbell Soup Co.*, 2011 WL 1086764 (D.N.J. 2011); *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 15 (1994).[11]  Here,

---

[11] It is not necessary that a plaintiff prove that a defendant engaged in an unconscionable commercial practice; instead, proof of any of the listed acts, omissions, or violation of a regulation promulgated thereunder is enough to prove unlawful conduct under the NJCFA. *Cox,* 138 N.J. at 19.

Whirlpool made affirmative misrepresentations about the energy efficiency of its Mislabeled Washing Machines. Furthermore, Whirlpool violated applicable regulations concerning its advertising practices related to the energy efficiency of its Mislabeled Washing Machines.

> **i. Plaintiffs State A Claim Under The NJCFA Based On Whirlpool's Affirmative Acts**

The Complaint alleges in great detail that Whirlpool made affirmative misrepresentations to induce Plaintiffs and the putative class to purchase Mislabeled Washing Machines. These affirmative misrepresentations include promoting Mislabeled Washing Machines as ENERGY STAR-qualified and affixing them with the ENERGY STAR logo. Complaint ¶ 1. In fact, the Complaint plainly alleges the ENERGY STAR logo conveys that certified appliances (i) are required by the DOE to "exceed minimum standards for energy water efficiency;" (ii) use "37% less energy and 50% less water than standard models" on average; (iii) "will generate enough savings to recoup the higher price" of the appliance; and (iv) can help consumers to "maximize his or her energy savings while helping to protect the environment." *Id.* ¶¶ 1, 2, 25, 26.

> **ii. Plaintiffs State A Claim Under The NJCFA Based On Whirlpool's Violation Of Pertinent Regulations**

The New Jersey Administrative Code deems it unlawful for an "advertiser to fail to substantiate through documents, records or other written proof any claim regarding the ... efficiency ... of advertised merchandise available for sale." N.J.A.C.12:45A-9.2(a)(10). "Advertiser" is defined to mean "any person as defined by N.J.S.A. 56:8-1(d) who in the ordinary course of business is engaged in the sale … of merchandise at retail and who placed, either directly or through an advertising agency, an advertisement before the public." N.J.A.C. 13:45A-9.1. These regulations were promulgated by the Attorney General under the enabling powers vested in the Attorney General pursuant to N.J.S.A. § 56:8-4 (*see* administrative code

references).  There is no doubt that Whirlpool, in violation of the above provisions, could not substantiate its advertised claim that the Mislabeled Washing Machines were energy efficient, because despite the ENERGY STAR® label[12] affixed to each refrigerator, Whirlpool's Mislabeled Washing Machines were not energy efficient.

Defendants argue that Plaintiffs fail to identify "what specific information [the ENERGY STAR®] logo allegedly conveyed."  Whirlpool Br. at 7-8.  This is wrong.  In fact, *each* Plaintiff alleges that he or she "saw the ENERGY STAR® labels prior to and at the time of purchase ... and understood them as a representation ... that the machine met the standards of energy efficiency established by the ENERGY STAR® program, and that the machine would help him maximize his energy savings while helping to protect the environment."[13]  Complaint ¶¶ 29-38.

Next, Defendants argue that even if Plaintiffs understood the ENERGY STAR® logo to mean that their appliances are "energy efficient and would help 'protect the environment,' ... those representations are not alleged to be (and are not) false."  Whirlpool Br. at 8.  This is wrong.  The first paragraph of Plaintiffs' Complaint alleges: "the Mislabeled Washing Machines do ***not*** meet the ENERGY STAR® standards."  *Id.*  In fact, the EPA formally disqualified the Maytag Centennial MVWC6ESWW1 from the ENERGY STAR® program on May 7, 2012.  RJN Exh. A.  The Mislabeled Washing Machines fail to meet minimum standards for energy efficiency, and they are not ENERGY STAR®-qualified.  *Id.*

Defendants argue that Plaintiffs' Complaint fails to plead the circumstances of the retailers' marketing with particularity, and Plaintiffs "lump Defendants together."  Whirlpool Br.

---

[12]  *See Kordel v. U.S.*, 335 U.S. 345, 351 (1948) ("Every labeling is in a sense an advertisement.").

[13]  A party need not plead reliance under the NJCFA. *See Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., Inc.*, 192 N.J. 372, 391 (2007) ("Our CFA does not require proof that a consumer has actually relied on a prohibited act in order to recover.").

at 8-9.  This is wrong.  Plaintiffs' complaint alleges that "in making the sale, the retailer was acting with the knowledge and approval of Whirlpool and/or as the agent of Whirlpool" and that each Defendant "acted in concert, with the knowledge and approval of the other defendant[s] and/or as the agent of the other defendant[s] within the course and scope of the agency." Complaint ¶¶ 21, 29-38.  Plaintiffs' Complaint alleges exactly how the retailers promoted the ENERGY STAR® brand and advertised the Mislabeled Washing Machines.  *Id.* ¶¶ 15-19.  The Complaint identifies specific statements by each Defendant.  *Id.* ¶¶ 15-20.  Furthermore, the retailers adopted the misrepresentations as their own by promoting and selling the Mislabeled Washing Machines as ENERGY STAR®-certified devices.  *Id.* ¶¶ 8-9, 15-19, 21, 29-38.  As a whole, Plaintiffs' Complaint describes where each Plaintiff bought his appliance, what machine he bought, how much he paid, when he bought it, why he bought it, what representations each Defendant made, the representations he relied upon, why those representations were false, how the retailers adopted the misrepresentations as their own by promoting the Mislabeled Washing Machines as ENERGY STAR®-certified devices, and how the Defendants acted in concert and/or within the scope of their agency to fraudulently promote and sell the Mislabeled Washing Machines.  *Id.* ¶¶ 1-38.

**B.      Plaintiffs' Complaint Establishes An Ascertainable Loss And A Causal Relationship Between The Unlawful Conduct And That Loss[14]**

Defendants contend that Plaintiffs' Complaint fails to allege that the Plaintiffs "held a reasonable expectation regarding the Washers' relative energy efficiency or that the machines failed to meet that expectation." Whirlpool Br. at 10.  This is wrong.  In fact, the Complaint alleges that each Plaintiff expected that his Mislabeled Washing Machine would meet "the standards of energy efficiency established by the ENERGY STAR® program, and that the

---

[14] Defendants raise no additional arguments regarding causation. Whirlpool Br. at 10.

machine would help him maximize his energy savings while helping to protect the environment."
Complaint ¶¶ 29-38.

Plaintiffs' Complaint establishes an ascertainable loss – it even offers quantifiable damages. It alleges that the "fundamental bargain" of the ENERGY STAR® program is that "consumers pay a higher up-front price initially but save more on energy bills." Complaint ¶ 2. It then alleges that Defendants' misrepresentations resulted in a "costly double-whammy:" higher energy bills plus a substantial price premium for an ENERGY STAR® appliance. *Id.* ¶ 3. Defendants' argument that Plaintiffs have not alleged "the amount of the purported price premium or cost of additional energy consumed," is premature. Whirlpool Br. at 10. While those may be legitimate questions as discovery moves forward – particularly expert discovery concerning the amount of the premium ENERGY STAR® washing machines command in the marketplace, Plaintiffs are not required to state an exact calculation of damages at the pleading stage. *See, e.g.*, *Nelson v. Xacta 3000, Inc.*, No. 08-5426 (MLC), 2010 U.S. Dist. Lexis 47128, at *18 n.3 (D.N.J. May 12, 2010) ("A specific dollar amount is not required by Rule 9(b)."); *Torres-Hernandez v. CVT Prepaid Solutions, Inc.*, No. 3:08-cv-1057-FLW, 2008 U.S. Dist. Lexis 105413, at *20 (D.N.J. Dec. 9, 2008) ("Although there is no specific dollar amount alleged in Plaintiff's Complaint, that level of specificity is not required by the case law and Rule 9(b).").

Regardless, Plaintiffs plead specific facts that would allow the Court to quantify the difference in value. In fact, they alleges *two* possible theories of damages: the price premium for an ENERGY STAR appliance, plus increased energy costs over the life of the appliance. Complaint ¶ 3. Both theories are readily ascertainable for the finder of fact. *Id.* ¶ 46 ("The amount of the price premium can be reasonably quantified by an appropriate market study of the prices for comparable washing machines sold with and without the ENERGY STAR® logo, or

through a contingent valuation study, or through other means regularly employed by economic and valuation experts.").

## VII. PLAINTIFFS' COMPLAINT STATES CLAIMS FOR VIOLATION OF CALIFORNIA CONSUMER FRAUD STATUTES (COUNTS VI, VII, AND VIII)

### A. Plaintiffs' Complaint Establishes A Claim For Violation Of The CLRA (Count VI)

Defendants argue that Plaintiffs fail to "allege any misrepresentations with particularity," fail to allege that the ENERGY STAR® logo contains "specific representation[s] regarding relative energy use or efficiency," fail to "identify any marketing statement by any Defendant," and "fail to identify any misrepresentation or unfair business practice attributable to Sears, Lowe's, or Fry's." Whirlpool Br. at 11-12. This is wrong. Plaintiffs already addressed these same points above, in the context of the NJCFA. *See supra* Argument § VI.A.

Defendants then argue that "Defendants did not know the Washers allegedly were non-ENERGY STAR® compliant at the time of sale." Whirlpool Br. at 12-13. This is wrong. Plaintiff Baker purchased her washing machine on December 1, 2010, which was 72 days after the DOE notified Whirlpool that the appliance failed to meet ENERGY STAR® standards in testing. Complaint ¶¶ 37, 40.

Defendants attempt to downplay this fact by arguing that just because "a single unit of a particular model of Washer failed verification testing is not sufficient to impart knowledge of the alleged 'defect' as to the entire population of Washers." Whirlpool Br. at 13 n. 7. But this, too, is wrong. The DOE letter did not suggest disqualification of only the *unit* that was tested. That would be absurd. The DOE's letter states that "the clothes washer *model* identified below does not satisfy the ENERGY STAR® Program's energy-efficiency specifications." Kott Decl. Exh. A (Doc. 37-3) (emphasis added). The DOE's letter then specifies that if additional testing is not

19

requested, "DOE will find that Maytag *model* MVWC6ESWW1 failed testing, and refer the matter to Environmental Protection Agency to begin the process of disqualifying *the model and its derivatives* from the ENERGY STAR program." *Id.* (emphasis added).

Finally, Rule 9(b) permits that, "Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  In fact, Plaintiffs' Complaint generally alleges that "defendants were aware of the defect because they were aware that DOE-initiated testing had shown the Mislabeled Washing Machines did not comply with ENERGY STAR® standards." Complaint ¶ 100.  Furthermore, from the allegations in the Complaint it can be inferred that Defendants tested the models before marketing them – and thus had knowledge the models were non-compliant from their own tests.  Alternatively, if Defendants did not test the models for efficiency, then they knew their ENERGY STAR® claims were baseless.  Either way, the allegations meet Rule 9(b)'s pleading standards.

### B.  Plaintiffs' Complaint Establishes A Claim For Violation Of The UCL (Count VII)

Defendants argue that Plaintiffs fail to satisfy the "unlawful" prong of the UCL because they "do not identify the 'particular section of the statute that was violated.'"  Whirlpool Br. at 15.  This is wrong.  Plaintiffs' Complaint alleges that Defendants violated the Energy Policy and Conservation Act of 1975 ("EPCA"), the National Energy Conservation Policy Act of 1978 ("NECPA"), the National Appliance Energy Conservation Act of 1987 ("NAECA"), and applicable regulations.  Complaint ¶ 108.  It states that: (1) the ECPA, 42 U.S.C. § 6291 establishes "an energy conservation program for major household appliances;" (2) the NECPA, Pub. L. 95-619, adds amendments to the EPCA that gives the DOE authority to "regulate the minimum energy efficiency" of washing machines; and (3) the NAECA, Pub. L. 100-12, adds further amendments to the EPCA that establishes minimum energy efficiency standards for

washing machines.  *Id.* ¶ 25.  In totality, the ECPA, NAECPA, and NAECA give the DOE authority to establish energy efficiency standards for washing machines, "promote Energy Star compliant technologies," and the power to "preserve the integrity of the Energy Star label."  42 U.S.C. § 6294a;  Complaint ¶¶ 25-26, 108-09.  Under applicable regulations, the DOE set detailed testing standards for washing machines to be ENERGY STAR® certified.  21 C.F.R. § 430; 21 C.F.R. § 430.23; 21 C.F.R. § 430 Appx. J1 to Subpart B.  Plaintiffs' Complaint alleges that Defendants violated these statutes and regulations by improperly affixing an ENERGY STAR® logo to the Mislabeled Washing Machines.  Complaint ¶¶ 1, 25-26, 108-10.

Defendants argue that Plaintiffs fail to satisfy the "unfair" prong of the UCL because Plaintiffs' "fail to identify any specific statutory or regulatory provisions Defendants allegedly violated," and "Plaintiffs do not plead that the Washers lost their ENERGY STAR® rating or that the DOE or EPA ever determined that the Washers Plaintiffs purchased used more energy" than represented. Whirlpool Br. at 16-17.  This is wrong.  First, Plaintiffs' UCL claim references the ECPA, NECPA, NAECA, and applicable regulations.  Complaint ¶¶ 25-26, 108-09.  Second, Plaintiffs allege that "the Mislabeled Washing Machines do ***not*** meet the ENERGY STAR® standards," they allege the DOE notified Defendants of the noncompliance on September 20, 2010 and January 19, 2011, and they allege the DOE referred the matter to the EPA for disqualification.  *Id.* ¶¶ 40-44.  Lastly, the Mislabeled Washing Machines were, in fact, disqualified on May 7, 2012.  RJN Exh. A.

Defendants then argue that Plaintiffs fail to satisfy the "fraudulent" prong of the UCL because "the ENERGY STAR® logo, on its own, does not convey specific information regarding the Washers' relative energy efficiency." Whirlpool Br. at 14.  This is wrong.  As discussed in Argument § VI.A, *supra*, each Plaintiff alleges that he "understood [the ENERGY

STAR logo] as a representation ... that the machine met the standards of energy efficiency established by the ENERGY STAR® program, and that the machine would help him maximize his energy savings while helping to protect the environment."  Complaint ¶¶ 29-38.

Defendants also argue that Plaintiffs "must allege Defendants made a misrepresentation that was false at the time it was made." Whirlpool Br. at 14.  In fact, Plaintiffs make this exact allegation.   Complaint ¶¶ 1, 29-38.   The Complaint alleges that "the Mislabeled Washing Machines do **not** meet the ENERGY STAR® standards." *Id.*  In fact, the Mislabeled Washing Machines were not *ever* energy efficient, by the standards of the ENERGY STAR® program. Complaint ¶ 1.  The ENERGY STAR® logo is false now, and it was false when the Plaintiffs purchased their appliances. *Id.* ¶¶ 1, 29-38.

Finally, Defendants argue that the Complaint fails to plead that Defendants made "specific representations" that "the machines were less energy efficient than purportedly represented," and that Sears, Lowe's and Fry's "played no part" in the fraud. Whirlpool Br. at 14-17.  This is wrong.  Plaintiffs' Complaint identifies representations made by each Defendant, and it explains that the retailers adopted the misrepresentations as their own by promoting and selling the Mislabeled Washing Machines as ENERGY STAR-certified devices.   Plaintiffs' Complaint also alleges that each Defendant "acted in concert, with the knowledge and approval of the other defendant and/or as the agent of the other defendant."   Complaint ¶ 21; *see also* Argument § Section III.B.  These points were addressed above, in the context of the NJCFA. *See supra* Argument § VI.A.

**C.**     **Plaintiffs' Complaint Establishes A Claim For Violation Of The FAL (Count VIII)**

Defendants argue that Plaintiffs failed to identify "specific advertisements, when and where they were shown, [and] why they were untrue or misleading." Whirlpool Br. at 17-18.  In

22

fact, Plaintiffs make this exact allegation.  Plaintiffs allege that, "Participation in the ENERGY STAR® program has a significant impact on the marketability of products."  Complaint ¶ 27. They allege the Mislabeled Washing Machines "are more expensive than standard models, but they come with the promise of reduced energy bills," and that Plaintiffs paid "a substantial price premium" for the ENERGY STAR® status.  *Id.* ¶¶ 2-3.  Furthermore, the Complaint alleges that these advertisements were false because the appliances "do ***not*** meet the ENERGY STAR® standards."  *Id.* ¶ 1.  Finally, as discussed in Argument § VI.A, *supra*, Plaintiffs' complaint identifies statements by each Defendant, and it explains how the retailers adopted the misrepresentations as their own by promoting the Mislabeled Washing Machines as ENERGY STAR®-qualified.

## VIII.  PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE MICHIGAN MCPA (COUNT IX)

Defendants argue that Plaintiff McLenna failed to allege that he used his washer for "personal, family, or household services."  Whirlpool Br. at 25.  But there is no other purpose for which an individual like Plaintiff McLenna could possibly use this machine, which was labeled and sold for household use.  This is not an industrial machine.  *See* Kott Decl. Exh. D (Doc. 37-3) (Maytag's Warranty only applies for "normal single-family household use").  Furthermore, the Complaint alleges the washing machine is used for "personal, family or household purposes" by alleging that it is a "consumer product" as defined in 15 U.S.C. § 2301(1).  Complaint ¶ 64.

Next, Defendants argue that Plaintiffs failed to identify which sections of the MCPA were violated. Whirlpool Br. at 25-26.  But Plaintiffs alleged violations of CLRA § 1770(a)(5) and § 1770(a)(7), which are *identical* to Mich. Comp. Laws § 445.903(c) and § 445.903(e).[15]

---

[15] Furthermore, Plaintiffs' factual allegations are sufficient to allege that Defendants violated the following prohibited acts: "(s) Failing to reveal a material fact, the omission of which tends to

## IX.    PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE FLORIDA FDUPTA (COUNT X)

Defendants argue that Plaintiffs failed to allege that Plaintiff Reid "bought his Washer in Florida or was exposed to Defendants' allegedly deceptive or unfair practices in Florida." Whirlpool Br. at 27.  This is wrong.  Plaintiffs' complaint alleges that Plaintiff Reid "resid[es] in Tampa, Florida" and purchased his washing machine "from a nearby Air Force base." Complaint ¶¶ 10, 38.  In fact, MacDill Air Force Base is located 4 miles from downtown Tampa. Furthermore, Tampa is approximately 200 miles from the Georgia border.  Unless Defendants intend to argue that the word "nearby" means "over 200 miles away," Plaintiff Reid properly alleged that he bought his washing machine in Florida.

Defendants also argue that "the ENERGY STAR logo" does not convey "specific information regarding the Washers' relative energy use," that Plaintiffs failed to allege "the[ir] understanding of the ENERGY STAR program," that Plaintiffs failed to identify how Defendants violated the ECPA, NECPA, and NAECA by mislabeling their washers, and that Plaintiffs failed to plead sufficient facts for the Court to determine "whether ... an ENERGY STAR compliant Washer differs, if at all, from the value of" a non-ENERGY STAR® washer. Whirlpool Br. at 28-29.   This is wrong.  Plaintiffs already addressed all these points above, in the context of the NJCFA.  *See supra* Argument § VI.

## X.    PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE OHIO OCSPA (COUNT XII)

Defendants argue that Plaintiffs fail to meet the heightened pleading standard of Rule 9(b).  Whirlpool Br. at 20-21.  This is wrong.  As discussed in Argument § VI, *supra*, Plaintiffs'

---

mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; ... [and] (bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is."  Mich. Comp. Laws § 455.903(s) and (bb).

Complaint describes where each Plaintiff bought his appliance, what machine he bought, how much he paid, when he bought it, why he bought it, what representations each Defendant made, the representations he relied upon, why those representations were false, how the retailers adopted the misrepresentations as their own by promoting the Mislabeled Washing Machines as ENERGY STAR® qualified devices, and how the Defendants acted in concert and/or within the scope of their agency to fraudulently promote and sell the Mislabeled Washing Machines. *Id.* ¶¶ 1-38. Plaintiffs' Complaint also properly alleges mental state: "defendants were aware of the defect because they were aware that DOE-initiated testing had shown the Mislabeled Washing Machines did not comply with ENERGY STAR® standards." Complaint ¶ 100; *see also supra* Argument § III.C; Fed R. Civ. Pro 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Defendants then argue that "the ENERGY STAR logo" does not make specific representations, Plaintiffs fail to make "allegations relating to Defendants' marketing statements," and "Plaintiffs impermissibly lump Defendants together." Whirlpool Br. at 21. This is wrong. Plaintiffs already addressed these same points above, in the context of the NJCFA. *See supra* Argument § VI.

Finally, Defendants argue that Plaintiffs failed to identify "a publicly available decision by an Ohio court" holding that mislabeling of appliances is unlawful. Whirlpool Br. at 21-24. Particularly, Defendants argue that Plaintiffs' cases are inadequate because "none of the cited decisions involve washing machines or the appliance industry," and three were consent judgments. *Id.* But there are, in fact, Ohio cases that prohibit the mislabeling of appliances and refusal to honor warranties. *See, e.g., State ex rel. Celebrezze v. Moore, et al.*, No. 86cv-02-1297, Court of Common Pleas, Franklin County, Public Inspection File 100000851 (where an

appliance dealer represented that the subjects of consumer transactions "had sponsorship, approval, performance characteristics, accessories, uses or benefits they did not have" and refused to honor warranties).[16]  Defendants do not argue – and the OCSPA does not require – that notice of similar cases must be filed contemporaneously in the Complaint.[17]

## XI.    PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE INDIANA IDCSA (COUNT XIII)

Defendants argue that Plaintiffs "failed to plead any misconduct with the requisite particularity."  This is wrong.  Plaintiffs already addressed these same points above, in the context of the NJCFA.  *See supra* Argument § VI

Defendants then argue that the IDCSA "requires an oral or written act or representation, [and] does not apply to non-disclosures." Whirlpool Br. at 24.  This is inaccurate.  Plaintiffs allege that labeling the Maytag Centennial washing machines with a false ENERGY STAR® logo is an affirmative misrepresentation, not an omission.  Complaint ¶¶ 1-3, 29-38.  In fact, the first sentence of Plaintiffs' complaint alleges that Defendants "*misrepresent[ed]* the energy efficiency of Maytag Centennial washing machines ... *[by] labeling them with the ENERGY STAR® logo*."  Complaint ¶ 1 (emphasis added).

Finally, Defendants argue that Plaintiffs failed to plead an "incurable" act (where Defendants made representations with intent to defraud) or an "uncured" deception (where

---

[16] *See also Felix, et al. v. Kirby Vacuum Cleaner Co.*, No. 85L-80337, Court of Common Pleas, Licking County, Public Inspection File 10000059 (where a manufacturer of consumer vacuums sold them as new when they were not); *State ex rel. Brown v. Lyons*, No. A-742156, Court of Common Pleas, Hamilton County, Public Inspection File 100000304 (where an appliance dealer falsely represented his goods "had performance characteristics, uses, and benefits which, in fact, they did not have," intentionally made "deceptive and false statements" in the sale of appliances, and refused to honor express warranties); *Thomas Horinek v. European Health Concepts, Inc.*, No. 02CVE02764, Municipal Court, Lorain County, Public Inspection File 10002143 (where the seller of "magnetic therapy sleep" mattresses refused to honor warranties).

[17] Count VI, for violation of the Ohio Deceptive Trade Practices Act, is hereby withdrawn.

Defendants failed to correct a deceptive act). Whirlpool Br. at 24-25.  This is wrong.  Plaintiffs'

complaint alleges both.  First, Plaintiffs allege an incurable act because Defendants were first

notified on September 20, 2010 that the Mislabeled Washing Machines failed to meet ENERGY

STAR® standards.  Complaint ¶ 40.  Nonetheless, Defendants did not recall the Mislabeled

Washing Machines, and Defendants knowingly sold a Mislabeled Washing Machine to Plaintiff

Baker with intent to defraud *after* receiving notice of the noncompliance.  *Id.* ¶ 37*; see also*

*supra* Argument § III.C.  Second, Plaintiffs allege that after receiving notice, Defendants failed

to correct the issue.  *Id.* ¶ 45.  Instead, "Whirlpool and the EPA reached an informal and private

agreement" whereby Whirlpool would cease the manufacture or sale of the Mislabeled Washing

Machines, but Plaintiffs "were given no notice of this agreement" or the noncompliance.  *Id.*

## XII.   PLAINTIFFS' COMPLAINT STATES A CLAIM FOR VIOLATION OF THE TEXAS DTPA (COUNT XIV)

Defendants argue that Plaintiffs' DTPA claims are time-barred. Whirlpool Br. at 29-30.

This is wrong.  Plaintiffs can invoke the "discovery rule," which acts to "defer[] accrual of

certain causes of action until the plaintiff knew, or exercising reasonable diligence, should have

known of the wrongful act causing injury."  *Salinas v. Gary Pools, Inc.*, 31 S.W.3d 333, 336

(Tex. App. 2000).  "The [discovery] rule always applies to DTPA claims," which accrue on the

date on which the consumer discovered or in the exercise of reasonable diligence should have

discovered the occurrence of the false, misleading, or deceptive act or practice.  *Id.*  Nonetheless,

Defendants argue that Plaintiffs must satisfy some great burden to apply the discovery rule.

Whirlpool Br. at 29-30.  But tellingly, none of Defendants' cases involve a DTPA claim, because

the rule always applies in DTPA cases.

Furthermore, Plaintiffs' complaint plainly alleges that consumers "were given no notice

of ... the Mislabeled Washing Machines' noncompliance with the ENERGY STAR® standard."

Complaint ¶ 45.  In fact, Defendants hid the defect from consumers for 17 months.  Plaintiffs allege that Whirlpool was first notified of the noncompliance by the DOE on September 20, 2010, but Whirlpool provided consumers with "no notice ... of the Mislabeled Washing Machines' noncompliance with the ENERGY STAR® standard."  Complaint ¶¶ 40, 45; *see also supra* Argument § III.C.  Therefore, the statute of limitations began tolling on May 7, 2012, when the Mislabeled Washing Machines were formally disqualified.  RJN Exh. A.

Finally, Defendants argue that Plaintiffs fail to plead an "unconscionable action" with the requisite particularity of Rule 9(b).  Whirlpool Br. at 30-31.  This is wrong.  Plaintiffs already addressed these points above, in the context of the NJCFA.  *See supra* Argument § VI.

## XIII.   PLAINTIFFS MAY ASSERT CLAIMS ON BEHALF OF ALL PURCHASERS OF THE MVWC6ESWW0, MVWC6ESWW1, AND MVWC7ESWW0

Defendants argue that Plaintiffs lack standing to "pursue claims relating to washer models they did not buy."  Whirlpool Br. at 5-6.  For example, Defendants contend that Plaintiff Reid, who purchased a Maytag Centennial MVWC6ESWW1, cannot represent a class of purchasers of the MVWC6ESWW0 or MVWC7ESWW0.  *Id.*; Complaint ¶ 38.  This is wrong.

First, Defendants do not argue there are any differences that affect energy efficiency.  In fact, the Mislabeled Washing Machines are virtually identical, and the minute differences between the units are irrelevant to energy efficiency.  Complaint ¶ 1 n. 1.  Plaintiffs allege the only notable difference between the models is that "the MVWC6ESWW0 adds an EMI/RFI filter" to the power line, which is a small electronic component that "reduce[s] electrical and radio interference."  *Id.* ¶ 1 n. 1.  Similarly, the MVWC7ESWW0 simply adds a glass top for cosmetic purposes.  *Id.*  These differences are irrelevant to the case at hand.  In fact, Plaintiffs' Complaint alleges that the machines "share the same motor, cabinet, electric wiring, control knobs, timer knobs, wash basket, agitator, drive tube, pump, and clutch."  *Id.* ¶ 1 n. 1.  And the

machines have "identical energy usage, water usage, and load capacity." *Id.* ¶ 1 n.1.  The MVWC6ESWW0 and MVWC6ESWW1 even share the same ENERGYGUIDE label. *Id.*

Second, courts in the District of New Jersey will permit "a plaintiff [to] establish typicality even where class members have bought products that differ from products the plaintiff bought," as long as there is "a strong similarity of legal theories." *Marcus v. BMW of N. Am., ,* *Civ. Action No. 08-5859 (KSH), 2010 U.S. Dist. Lexis 122908, at *16* (D.N.J. November 19, 2010); *see also Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 244 (D.N.J. 2008).  Although it is premature to address class certification issues at the motion to dismiss stage, it is significant to note that New Jersey courts routinely certify classes of consumers where there is "a strong similarity of legal theories," even if "class members have bought products that differ from products the plaintiff bought." *Marcus, 2010 U.S. Dist. Lexis 122908, at *52* (certifying a statewide class of all 2006-2009 BMW vehicles with run-flat tires, finding that "even relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories.").  Other relevant factors include claims that arise from the same alleged course of conduct, typical defenses asserted, and whether plaintiffs' incentives align with those of absent class members. *See, e.g.*, *Elias*, 252 F.R.D. at 244 (certifying an NJCFA claim for a wide variety of mislabeled frozen foods, where "all of the claims and allegations involve an evaluation of the product's representations regarding fat and calories, and arise from an alleged course of conduct in selling a product with false nutritional information."); *In re Indus. Diamonds Antitrust Litig.*, 167 F.R.D. 374 (S.D.N.Y. 1996); *Rivera v. Bio Eng'r Supplements & Nutrition, Inc.*, Case No. SACV 07-1306 JVS (RNBx), 2008 U.S. Dist. LEXIS 95083 (C.D. Cal. November 13, 2008); *Medrazo v. Honda of N. Hollywood*, 166 Cal App. 4th 89 (2008).

Here, each purchase of a Mislabeled Washing Machine has the same underlying facts, claims, allegations, and defenses.  Defendants made identical misrepresentations, because each appliance was falsely labeled with the ENERGY STAR® logo.  *See* Complaint ¶ 1.  Each Plaintiff suffered identical injuries, because each paid a substantial premium for his or her appliance, followed by higher energy costs.  *Id.* ¶ 4.  Each Plaintiff's incentives are aligned with the class, because each seeks recovery for Defendants' misrepresentations. *Id.*  And Defendants have brought identical defenses for each Mislabeled Washing Machine, and each machine has identical performance characteristics.  *See generally* Whirlpool Br.; Complaint ¶ 1 n. 1.

*Green v. Green Mountain Coffee Roasters, Inc.*, No. 11-2067 (SDW) (MCA), 2011 U.S. Dist. Lexis 146059, (D.N.J. December 20, 2011), cited at page 6 of Whirlpool's brief, is readily distinguishable.  The plaintiff in *Green Mountain* sought to represent a class that included purchasers of wildly disparate coffee machines: a Cuisinart coffee machine, a Mr. Coffee machine, a Breville machine, and ten different Keurig machines that included consumer units, office units, commercial units, and miniature units.  Here, Plaintiffs seek to represent a class of purchasers of nearly-identical washing machines.

## CONCLUSION

For the foregoing reasons, Whirlpool's Motion to Dismiss should be denied in its entirety.  Alternatively, if the motion is granted in any respect, Plaintiffs should be given leave to amend.

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiffs

By:   /s/ James E. Cecchi
JAMES E. CECCHI

Dated: June 25, 2012

Antonio Vozzolo
Christopher Marlborough
**FARUQI & FARUQI, LLP**
369 Lexington Avenue, 10th Floor
New York, New York  10017
(212) 983-9330

Scott A. Bursor
Joseph I. Marchese
**BURSOR & FISHER, P.A.**
369 Lexington Avenue, 10th Floor
New York, New York  10017
(212) 989-9113