**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| CHARLENE DZIELAK, SHELLEY BAKER, FRANCIS ANGELONE, BRIAN MAXWELL,  JEFFERY REID, KARI PARSONS, CHARLES BEYER, JONATHAN COHEN, JENNIFER SCHRAMM, and ASPASIA CHRISTY, on behalf of themselves and all others similarly situated,<br><br>                  Plaintiffs,<br><br>     v.<br><br>WHIRLPOOL CORPORATION, LOWE'S HOME CENTERS, LLC, SEARS HOLDINGS CORPORATION, HOME DEPOT U.S.A., INC., FRY'S ELECTRONICS, INC., and APPLIANCE RECYCLING CENTERS OF AMERICA, INC.,<br><br>               Defendants. | Civil Action No. 12-cv-00089 (KM)(JBC)<br><br>ORAL ARGUMENT REQUESTED |

---

**PLAINTIFFS' OPPOSITION TO MOTION TO STRIKE**
**THE OPINIONS OF DR. R. SUKUMAR BY DEFENDANTS WHIRLPOOL**
**CORPORATION, LOWE'S HOME CENTERS, LLC, SEARS HOLDINGS**
**CORPORATION, AND FRY'S ELECTRONICS, INC.**

---

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO, P.C.
5 Becker Farm Road
Roseland, NJ  07068
(973) 994-1700

Antonio Vozzolo
VOZZOLO LLC
345 Route 17 South
Upper Saddle River, NJ  07548
(201) 630-8820

*Co-Lead Interim Class Counsel*

Scott A. Bursor
Joseph I. Marchese
Yitzchak Kopel
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY  10019
(212) 989-9113

# TABLE OF CONTENTS

**PAGE(S)**

I.   INTRODUCTION ................................................................................................ 1

II.  DR. SUKUMAR'S OPINIONS AND REPORT ............................................... 2

    A.   Dr. Sukumar's Education, Training, And Experience ............................. 2

    B.   Background Of Dr. Sukumar's Survey And Opinions ............................. 3

III. LEGAL STANDARD ........................................................................................ 7

IV.  ARGUMENT ..................................................................................................... 8

    A.   Dr. Sukumar's Opinions Are Based On Reliable Methodologies ........... 9

        1.   The Conjoint Analysis And ASEMAP Methodologies Are Based On Accepted Principles ................................................... 9

        2.   The ASEMAP Methodology Can Be Replicated ........................ 12

        3.   ASEMAP Has Been Shown In Peer Reviewed Journals To Have External And Predictive Validity .................................... 14

        4.   Defendants' Criticisms That Dr. Sukumar's Survey Results Are Irrational Go To The Weight Of His Testimony, Rather Than Its Admissibility ................................................................ 17

        5.   Defendants' Technical Complaints Regarding Dr. Sukumar's Exclusions From The Survey Data Go To The Weight Of His Testimony, Not Its Admissibility ...................... 18

        6.   Defendants' Technical Complaints Regarding Dr. Sukumar's Survey Population Go To The Weight Of His Testimony, Not Its Admissibility ............................................... 20

    B.   Dr. Sukumar's Opinions Are Consistent With Plaintiffs' Theory Of Liability ............................................................................................... 22

        1.   Dr. Sukumar's Methodology "Fits" The Facts Of The Case ...................... 22

        2.   Defendants' Criticism That Dr. Sukumar Failed To Consider The "Benefits Received By Class Members" Is Meritless .................................................................................... 25

    C.   Irrespective Of Dr. Sukumar's Testimony, Plaintiffs Have Satisfied Their Burden Regarding Class Certification ............................ 27

V.   CONCLUSION ................................................................................................ 28

i

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Baldwin v. Bader,*
   539 F. Supp. 2d 443 (D. Me. 2008) ...................................................................... 27

*BellSouth v. Internet Classifieds of Ohio,*
   1997 WL 33107251 (N.D. Ga. Nov. 12, 1997) .................................................. 21

*Crowley v. Chait,*
   322 F. Supp. 2d 530 (D.N.J. 2004) .............................................................. 16, 17

*Daubert v. Merrell Dow Pharms.,*
   509 U.S. 579 (1993) ............................................................................... passim

*Doctor's Assoc., v. QIP Holder,*
   2010 WL 669870 (D. Conn. Feb. 19, 2010) ...................................................... 21

*Elcock v. Kmart Corp.,*
   233 F.3d 734 (3d Cir. 2000) ............................................................................... 7

*Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.,*
   618 F.3d 1025 (9th Cir. 2010) ................................................................... 10, 17

*Guido v. L'Oreal, USA, Inc,*
   2014 WL 6603730 (C.D. Cal. July 24, 2014) ....................................... 10, 12, 25

*Hartle v. FirstEnergy Generation Corp.,*
   7 F. Supp. 3d 510 (W.D. Pa. 2014) ........................................................... 22, 27

*Heller v. Shaw Indus.,*
   167 F.3d 146 (3d Cir. 1999) ..................................................................... 11, 12

*In re ConAgra Foods Inc.,*
   90 F. Supp. 3d 919, 949 (C.D. Cal. 2015) ................................................. 24, 25

*In re NJOY, Inc. Consumer Class Action Litigation,*
   120 F. Supp. 3d 1050 (C.D. Cal. 2015) ...................................................... 24, 25

*In re Paoli R.R. Yard PCB Litig.,*
   35 F.3d 717 (3d Cir. 1994) ................................................................... 7, 8, 22

*In re POM Wonderful L.L.C.,*
   2014 WL 1225184 (C.D. Cal. Mar. 25, 2014) ................................................. 26

*In re TMI Litig.,*
   193 F.3d 613 (3d Cir. 1999) ....................................................................... 9, 16

*Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,*
   716 F.2d 833 (11th Cir. 1983) ......................................................................... 22

*Jones v. ConAgra Foods, Inc.*,
  2014 WL 2702726 (N.D. Cal. June 13, 2014) ....................................................... 26

*Koninkijke Philips Elecs. N.V. v. Hunt Control Sys.*,
  2016 U.S. Dist. LEXIS 84299 (D.N.J. June 29, 2016) ................................. 9, 21, 22

*Khoday v. Symantec Corp.*,
  2014 U.S. Dist. LEXIS 43315 (D. Minn. Mar. 31, 2014) ........................... 10, 25, 27

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) .................................................................................. 7, 9, 14

*Liberty Life Ins. Co. v. Myers*,
  2013 WL 524587 (D. Ariz. Feb. 11, 2013) ............................................................ 14

*Microsoft Corp. v. Motorola, Inc.*,
  904 F. Supp. 2d 1109 (W.D. Wash. 2012) ..................................................... passim

*Oracle Am., Inc. v. Google Inc.*,
  2012 WL 850705 (N.D. Cal. Mar. 13, 2012) ........................................................ 20

*Patrick v. FirstEnergy Generation Corp.*,
  2014 U.S. Dist. LEXIS 151572 (W.D. Pa. Oct. 27, 2014) ...................................... 20

*Rink v. Cheminova, Inc.*,
  400 F.3d 1286 (11th Cir. 2005) ........................................................................... 11

*Saavedra v. Eli Lilly & Co.*,
  2014 U.S. Dist. LEXIS 179088 (C.D. Cal. Dec. 18, 2014) .................................... 24

*Sanchez-Knutson v. Ford Motor Co.*,
  2016 U.S. Dist. LEXIS 58207 (S.D. Fla. 2016) ..................................................... 22

*Schering Corp. v. Pfizer Inc.*,
  189 F.3d 218 (2d Cir. 1999) ................................................................................... 8

*Smith v. Freightliner, L.L.C.*,
  239 F.R.D. 390 (D.N.J. 2006) ............................................................................... 14

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) .............................................................................. 10

*Tiffany & Co. v. Costco Wholesale Corp.*,
  127 F. Supp. 3d 241 (S.D.N.Y. 2015) ..................................................................... 8

*TV Interactive Data Corp v. Sony Corp.*,
  929 F. Supp. 2d 1006 (N.D. Cal. 2013) .......................................................... passim

*United States v. Bonds*,
  12 F.3d 540 (6th Cir. 1993) ........................................................................... 15, 27

*Victoria's Secret Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*,
  2009 WL 959775 (S.D.N.Y. Apr. 8, 2009) ............................................................. 9

*Voilas v. GMC*,
    73 F. Supp. 2d 452 (D.N.J. 1999) ......................................................................... 19

*Wendt v. Host Int'l, Inc.*,
    125 F.3d 806 (9th Cir. 1997) ............................................................................... 10

*Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*,
    2014 U.S. Dist. LEXIS 141303 (N.D. Ohio Oct. 3, 2014) ...................................... 11

**RULES**

Fed. R. Civ. P. 26(a)(2)(B) ...................................................................................... 13

Fed. R. Evid. 401 .................................................................................................... 11

Fed. R. Evid. 702 ............................................................................................. passim

I.       INTRODUCTION

Dr. Ramamirtham Sukumar's assignment was to "estimate the price premium, if any, attributable to the Energy Star logo on Maytag Centennial washing machines" at issue in this litigation "through the use of a conjoint analysis."  12/28/15 Sukumar Decl. at 4, Deckant Decl. Ex. R.  Dr. Sukumar holds a Ph.D. in Marketing and Statistics from the University of Pittsburgh, is one of the leading experts in the field of conjoint analysis, and has testified in multiple federal court proceedings.  *See id.*, Ex. 1 (Dr. Sukumar's curriculum vitae).  In this matter, ████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████████

███

Defendants do not challenge the qualifications of Dr. Sukumar.  Rather, Defendants challenge Dr. Sukumar's methodology and his underlying assumptions.  However, as case law makes clear, Defendants' challenges go to the weight of Dr. Sukumar's testimony, <u>not</u> its admissibility under *Daubert*.  Likewise, Defendants disagree with Dr. Sukumar's conclusions regarding the scope and extent of the price premium, but these arguments also cut towards the weight of his testimony, not its admissibility.  Regardless, Dr. Sukumar is imminently qualified and has arrived at his conclusions by applying a widely-accepted and peer-reviewed methodology to reliable data.  Moreover, his testimony will assist the Court in determining whether Plaintiffs can set forth a methodology for calculating the price premium solely

attributable to the Energy Star logo®, a significant question at the class certification stage.[1]

Defendants' motion should therefore be denied in its entirety.

## II.   DR. SUKUMAR'S OPINIONS AND REPORT

### A.   Dr. Sukumar's Education, Training, And Experience

Dr. Sukumar is Chief Executive Officer of the Optimal Strategix Group ("OSG"), and specializes in conjoint surveys.  He holds an MBA and a Ph.D. in Marketing and Statistics from the University of Pittsburgh.  *Id*. at 3.  Dr. Sukumar has also held several teaching and academic research positions, including at the University of Houston – C.T. Bauer School of Business, Rice University – Jones School of Management, and Thunderbird – American Graduate School of International Management.  He has also served as the academic associate Dean at the Indian School of Business, a joint collaboration of University of Pennsylvania, Northwestern University, and London School of Business.  *Id.*, Ex. 1 (curriculum vitae).  At these Universities, Dr. Sukumar taught several courses for MBA and EMBA students including Marketing Research, Global Product Development, Analysis for Strategic Marketing, Marketing Management, and advanced courses in Statistics and Marketing.  *Id.*  Dr. Sukumar has also authored peer-reviewed articles that have been published in Management Science, and the Handbook of Marketing Research.  *Id.*

███████████████████████████████████

████████████████████████████████████

████████████████████████████████████

██████████████████████████████████████

███████████████████

---

[1] As explained in the contemporaneously-filed opposition to Defendants' motion to strike the opinions of Mr. Colin Weir, Dr. Sukumar's testimony is only relevant to <u>one of the two</u> damages models proffered by Mr. Weir: "price premium" damages.  Indeed, his testimony has no bearing on Mr. Weir's "energy expense" damages.  *See* Weir Motion To Strike Opposition at § III.B.5.

He has also been approved as an expert witness in multiple lawsuits, where he has proffered expert testimony based upon survey research using conjoint analysis techniques. *Id.* at 4. For example, in *Microsoft Corp. v. Motorola, Inc.*, 904 F. Supp. 2d 1109, 1119-20 (W.D. Wash. 2012), the court denied defendants' *Daubert* challenge to Dr. Sukumar's conjoint survey to determine the market value of certain features in Microsoft's Xbox 360 console. *Id.*

Notably, Dr. Sukumar's testimony has never been excluded under *Daubert* or any similar legal standard. Nor has his testimony ever been found unreliable or excluded in any case, for any reason.

**B.      Background Of Dr. Sukumar's Survey And Opinions**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████

     Conjoint analysis is a well-proven, well-established survey methodology that has been subject to decades of peer-reviewed articles.  *Id.* at 5.  Furthermore, conjoint analysis is routinely and heavily relied upon by U.S. and international companies in product development and price determinations.  6/17/16 Sukumar Rebuttal Decl. at 9, Deckant Decl. Ex. S.[2]

            ██████████████████████████████████████████████

██████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████

██████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

---

[2] Another advantage of a conjoint analysis methodology is that it puts the feature of interest in the context of other features, so that the survey respondent's attention is not focused on only one feature.  6/17/16 Sukumar Rebuttal Decl. at 13, Deckant Decl. Ex. S.

6

███████████████████████████████████████████

███████████████████████████████████

██████████████████████████████████████

████████████████████████████████████████████

█████████████████

## III.   LEGAL STANDARD

Fed. R. Evid. 702 establishes that expert testimony is admissible if "scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue." *Id.* Rule 702 is applied consistent with "the 'liberal thrust' of the Federal Rules and their 'general approach of relaxing the traditional barriers to 'opinion testimony.'" *Daubert v. Merrell Dow Pharms.*, 509 U.S. 579, 588 (1993) (internal citation omitted).

The Supreme Court in *Daubert* and the Third Circuit in *Paoli* announced factors for courts to consider in determining whether to admit expert testimony. These factors include:

> (1) whether a method consists of a testable hypothesis; (2) whether the method has been subject to peer review; (3) the known or potential rate of error; (4) the existence and maintenance of standards controlling the technique's operation; (5) whether the method is generally accepted; (6) the relationship of the technique to methods which have been established to be reliable; (7) the qualifications of the expert witness testifying based on the methodology; and (8) the nonjudicial uses to which the method has been put.

*In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 742 n.8 (3d Cir. 1994).

This list is "nonexclusive" and "each factor need not be applied in every case." *Elcock v. Kmart Corp.*, 233 F.3d 734, 746 (3d Cir. 2000). Rather, the court must tailor its inquiry to the facts of each case and "should consider the specific factors identified in *Daubert* where they are reasonable measures of the reliability of the expert testimony." *Kumho Tire Co. v. Carmichael*,

526 U.S. 137, 152 (1999). The proponent of expert testimony must establish the admissibility of the expert's opinion by a preponderance of the evidence. *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 744.

In considering the reliability of an expert's testimony, the court's inquiry must be based "solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. However, an expert's testimony need not be flawless for it to be reliable and admissible. As the Third Circuit has recognized, "the grounds for the expert's opinion merely have to be good, they do not have to be perfect." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d at 744. Furthermore, the court's role as a gatekeeper "is not intended to serve as a replacement for the adversary system." Fed. R. Evid. 702, Advisory Committee Notes. As the Supreme Court noted in *Daubert,* "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 59.

## IV.    ARGUMENT

Defendants do not criticize Dr. Sukumar on the basis of his qualifications, nor can they. Dr. Sukumar is one of the leaders in the field of conjoint analysis, and has been approved as an expert in numerous prominent federal court decisions. 12/28/15 Sukumar Decl. at 3-4, Deckant Decl. Ex. R. Rather, Defendants move to strike the expert testimony of Dr. Sukumar based on various methodological criticisms. But such methodological criticisms of consumer surveys go to the weight of the evidence, and do not affect admissibility. *See Tiffany & Co. v. Costco Wholesale Corp.*, 127 F. Supp. 3d 241, 250 (S.D.N.Y. 2015) (holding that the criticism that a survey expert "should have surveyed a different population of consumers" and that the "study was not designed in a way that approximated actual marketplace conditions," "goes to the weight [of the expert's testimony], rather than the admissibility"); *Schering Corp. v. Pfizer Inc.*, 189

F.3d 218, 228 (2d Cir. 1999) (Sotomayor, J.) ("[E]rrors in methodology [of consumer surveys] … go only to the weight of the evidence."); *Victoria's Secret Brand Mgmt., Inc. v. Sexy Hair Concepts, LLC*, 2009 WL 959775, at *11 n.9 (S.D.N.Y. Apr. 8, 2009) (holding that the criticism that a consumer survey "failed to incorporate a control group" "bear[ed] exclusively on the weight to be given the survey rather than bearing on an admissibility determination").  As set forth below, Defendants' complaints do <u>not</u> concern the reliability of Dr. Sukumar's methodology, but merely concern the weight of his testimony, which is for the jury to consider.

### A. Dr. Sukumar's Opinions Are Based On Reliable Methodologies

#### 1. The Conjoint Analysis And ASEMAP Methodologies Are Based On Accepted Principles

Defendants argue that Plaintiffs "cannot prove" that Dr. Sukumar's ▋▋▋▋▋▋▋▋

▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋▋ Defs.' Br. at 10. In making this argument, Defendants assert (based solely on the opinion of Dr. Rossi) that Dr. Sukumar's methodology is based on a little known proprietary method [ASEMAP] that is rarely used" and is "substantially different from any accepted conjoint methods." *Id.* at 10-12. Defendants' arguments are inaccurate and misplaced.

First, Defendants misconstrue the standards of admissibility.  It "is not whether a particular scientific opinion has the best foundation, or even whether the opinion is supported by the best methodology or unassailable research." *In re TMI Litig.*, 193 F.3d 613, 665 (3d Cir. 1999), *amended sub nom. In re TMI Litig.*, 199 F.3d 158 (3d Cir. 2000).  Rather, the court must "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field."  *Kumho Tire Co.*, 526 U.S. at 152; *Koninkijke Philips Elecs. N.V. v. Hunt Control Sys.*, 2016 U.S. Dist. LEXIS 84299, at *12-13 (D.N.J. June 29, 2016)

("[A]s long as they are conducted according to accepted principles, survey evidence should ordinarily be found sufficiently reliable under *Daubert*.") (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1143 n.8 (9th Cir. 1997)) (internal citation omitted); *Fortune Dynamic, Inc. v. Victoria's Secret Stores Brand Mgmt.*, 618 F.3d 1025, 1036 (9th Cir. 2010) ("[S]urvey evidence should be admitted [if it is] conducted according to accepted principles and [is] relevant.") (internal quotation marks and citations omitted); *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997) ("Challenges to survey methodology [typically] go to the weight given the survey, not its admissibility."); *In re Conagra Foods, Inc.* ("*ConAgra II*"), 90 F. Supp. 3d 919, 949 (C.D. Cal. 2015) (collecting cases).

Under this standard, Dr. Sukumar's testimony is plainly admissible.  He utilized conjoint analysis, a widely-accepted survey research method for measuring consumer preferences, especially when measuring consumer preferences for product attributes.  12/28/15 Sukumar Decl. at 4, Deckant Decl. Ex. R.  Dr. Sukumar notes that conjoint analysis has been the subject of published research for the past 35 years, and is now widely-accepted, with over 18,000 conjoint projects conducted worldwide each year.  *Id.* at 4.  Furthermore, numerous courts have acknowledged that conjoint analysis is commonly recognized as an accepted, reliable, and sound methodology because it is "regularly used in litigation to translate the 'relative importance' of a product feature into price premium paid by consumers."  *ConAgra II*, 90 F. Supp. 3d at 1027; *see also id.* (ruling that a conjoint "methodology is capable of calculating damages attributable to plaintiffs' specific theory of liability on a classwide basis" and rejecting *Daubert* challenge to plaintiffs' expert's proffered conjoint analysis); *Khoday v. Symantec Corp.*, 2014 U.S. Dist. LEXIS 43315, at *105 (D. Minn. Mar. 31, 2014) (approving conjoint analysis to determine damages on a class-wide basis because it "allows for a determination of the actual value to consumers"); *Guido v. L'Oreal, USA, Inc*, 2014 WL 6603730, at *4-6 (C.D. Cal. July 24, 2014)

(conjoint analysis that calculated the price premium attributable to a flammability warning on defendant's hair products complied with *Comcast*); *TV Interactive Data Corp v. Sony Corp.*, 929 F. Supp. 2d 1006 (N.D. Cal. 2013) (rejecting *Daubert* challenge); *Microsoft Corp*, 904 F. Supp. 2d at 1120 (finding conjoint survey "admissible as relevant under FRE 401" and "sufficiently reliable under FRE 702 and *Daubert*"); *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 2014 U.S. Dist. LEXIS 141303, at *64-71 (N.D. Ohio Oct. 3, 2014) (rejecting *Daubert* challenge and approving a conjoint survey as "reliable").

Next, Defendants contend that ASEMAP is "substantially different from any accepted conjoint methods – if it can be considered conjoint at all." Defs.' Br. at 10. However, this argument is supported only through deposition testimony from Defendants' expert, Dr. Peter E. Rossi, who offers no support for this assertion. Nor does Dr. Rossi provide any authority criticizing the use of ASEMAP. Rather, Defendants are merely arguing that Dr. Rossi's testimony is more persuasive, but "a district court may not exclude an expert because it believes one expert is more persuasive than another expert." *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1293 (11th Cir. 2005); *see also Heller v. Shaw Indus.*, 167 F.3d 146, 160-61 (3d Cir. 1999) (recognizing that expert testimony is admissible even though one expert uses a different test than another expert, when both tests are accepted in the field and both reach reliable results.).

Nonetheless, the ASEMAP methodology is reliable and based on a long-standing methodology that easily satisfies the requirements of admissibility under Rule 702. In his expert report, Dr. Sukumar notes that the use of ASEMAP is supported by peer-reviewed articles. *See* 12/28/15 Sukumar Decl. at 8-9, Deckant Decl. Ex. S. For example, in a research paper by Professors Oded Netzer and V. Srinivasan, published in February 2011 in the Journal of Marketing Research, the ASEMAP method was found to predict consumer choices substantially and statistically better than alternative methods of conjoint analysis, such as Adaptive Conjoint

Analysis ("ACA"). *Id.* Defendants also ignore the fact that ASEMAP has been accepted by federal courts as a valid method of estimating changes in market value for purposes of performing damage calculations in litigation. *See*, *e.g.*, *T.V. Interactive Data Corp.*, 929 F. Supp. 2d at 1020-27; *Microsoft Corp.*, 904 F. Supp. 2d at 1119-20. Additionally, ASEMAP has been used extensively in more than 500 engagements and multiple patent infringement lawsuits. Dr. Sukumar has also employed ASEMAP outside of litigation to assist companies in valuing various features of their consumer products. *See* 12/28/15 Sukumar Decl. at 3-4, Deckant Decl. Ex. R.[5] This extensive review, while not taking place exclusively through academic journals, fully serves the purpose of testing the validity of his methods and increases the likelihood that any significant flaws in his methods would have been exposed during the lengthy period in which he has used conjoint analysis.[6]

### 2.    The ASEMAP Methodology Can Be Replicated

Defendants contend that Dr. Sukumar's results cannot be replicated because "Dr. Sukumar has refused to divulge any details about how ASEMAP actually works, including the algorithm that drives its results." Defs.' Br. at 13-15. Defendants' argument is incorrect and misleading.

First, ASEMAP is implemented through proprietary software, just like Microsoft Excel, Stata, Sawtooth, or other common tools often employed by experts. ASEMAP is available online, through its own website, at http://www.asemap.com. *See* 6/10/16 Weir Rebuttal Decl. ¶¶

---

[5] That Dr. Sukumar uses ASEMAP rarely outside of his firm, as Defendants suggest (Defs.' Br. at 11), is of no consequence. *See*, *e.g.*, *Guido*, 2014 U.S. Dist. LEXIS 165777, at *18-19 (noting the fact that defendant's own expert has used conjoint analysis in his own academic and consulting work indicates the model's reliability and appropriateness).

80-83, Deckant Decl. Ex. E.  Accordingly, Defendants could have purchased the software to access and utilize ASEMAP, but they failed to do so.  The fact that ASEMAP is proprietary software, and must be purchased, does not preclude replication.[7]

Regardless, Dr. Sukumar has been more transparent than most experts, providing peer-reviewed journal publications that guide readers through the use and understanding of the ASEMAP methodology.  His expert report details precisely how he designed and implemented his survey, and it also sets forth the "facts and data" that he relied upon and derived.  *See* Fed. R. Civ. P. 26(a)(2)(B); *see also generally* 12/28/15 Sukumar Decl., Deckant Decl. Ex. R; 6/17/16 Sukumar Rebuttal Decl., Deckant Decl. Ex. S.  Furthermore, Dr. Sukumar was forthright in his deposition:



Sukumar Dep at 240:5-24, Deckant Decl. Ex. T

---

[7] Although Defendants correctly note that Dr. Sukumar was prohibited from disclosing the ASEMAP source code himself due to a confidentiality agreement, Defendants never moved to compel Dr. Sukumar to produce.  Additionally, in response to Defendants' request for information related to ASEMAP, Plaintiffs provided Dr. Sukumar's complete worksheets and datasheets.

Accordingly, Dr. Sukumar's opinions are replicable because they can be independently verified or objectively challenged. [8]  *See* Fed. R. Evid. 702 Advisory Committee Notes (*Daubert*'s replicability factor means capable of being "challenged in some objective sense").

Defendants' cases are inapposite.  In *Smith v. Freightliner, L.L.C.*, 239 F.R.D. 390, 393 (D.N.J. 2006), the court excluded a proffered expert opinion because it was not based on any discernible methodology and "did not adequately assess factors two and three of his own methodology."  Moreover, the court criticized the expert for arbitrary adjustments to the data: "[the] Court cannot say that Mr. Barone did not pull the twenty-five percent reduction out of a hat."  Unlike the plaintiffs' expert in *Smith*, Dr. Sukumar provided detail into precisely the methodology he used, how he conducted his survey, and the "facts and data" that he relied on.

### 3.  ASEMAP Has Been Shown In Peer Reviewed Journals To Have External And Predictive Validity

Defendants argue that ASEMAP was the subject of limited publication in academic literature, and is therefore unreliable.  Def. Br. at 16.  That is wrong.

Preliminarily, while publication in a peer-reviewed journal is not dispositive, it is a relevant "consideration in assessing the scientific validity of a particular technique or methodology on which an opinion is premised." *Daubert*, 509 U.S. at 5944.  Additionally, *Daubert* requires *general* acceptance, not *universal* acceptance.  Even "substantial criticism as to

---

[8] Even if Defendants argument were true, which Plaintiffs' dispute, this does not render Dr. Sukumar's testimony inadmissible under *Daubert*.  The Supreme Court has repeatedly clarified that the "factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue …." *Kumho Tire Co.*, 526 U.S. at 150.  The *Daubert* factors are not exhaustive, and the Court's task is not to apply *Daubert* as "a definitive checklist or test," but to "make certain that an expert … employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the field." *Kumho Tire Co.*, 526 U.S. at 152; *Liberty Life Ins. Co. v. Myers*, 2013 U.S. Dist. LEXIS 18811, 2013 WL 524587, at *3 (D. Ariz. Feb. 11, 2013) ("It is also well-settled that the four Daubert factors — testing, peer review, error rates, and acceptability in the relevant scientific community — are merely illustrative, not exhaustive, and may be inapplicable in a given case.").

one theory or procedure will not be enough to find that the theory/procedure is not generally accepted." *United States v. Bonds*, 12 F.3d 540, 562 (6th Cir. 1993).

Here, Dr. Sukumar relies upon peer-reviewed journals that have external and predictive validity, including the Journal of Marketing Research ("JMR"), a leading journal for the American Marketing Association.  6/17/16 Sukumar Rebuttal Decl. at 9, n.8, Deckant Decl. Ex. S. ████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████.  6/17/16 Sukumar Rebuttal Decl. at 9, Deckant Decl. Ex. S (citing pages 177-180 of the Dr. Rossi deposition).  Additionally, ASEMAP also been used extensively in more than 500 engagements and multiple patent infringement lawsuits.  *Id.* at 9.

Defendants also complain that the peer-reviewed articles discussing ASEMAP were authored by Dr. Srinivasan, the inventor of the ASEMAP methodology, who also holds an advisory role at Dr. Sukumar's company.  Defs.' Br at 16.  However, Professor Srinivasan is an undisputed expert in the conjoint analysis technique, having authored 24 peer-reviewed research papers on the topic.  *TV Interactive Data Corp.*, 929 F. Supp. 2d at 1019.  Further Dr. Srinivasan has served as a tenured and emeritus professor at the Stanford Graduate School of Business for the last 39 years, authoring over 100 articles in peer-reviewed journals.[9]

Next, Defendants argue that the peer-reviewed article Dr. Sukumar relies upon "said nothing about using ASEMAP to isolate a historical 'price premium.'"  Def. Br. at 16.  That is incorrect.  Rather, as Dr. Sukumar explained at length in his reports, and at his deposition,████

████████████████████████████████████████████████

████████████████████████████████████████

---

[9] https://www.gsb.stanford.edu/faculty-research/faculty/v-srinivasan (last accessed September 15, 2016).

███████████████████████████████████████████ *See* 12/28/15 Sukumar

Decl. at 6, Deckant Decl. Ex. R; *see also* 6/17/16 Sukumar Rebuttal Decl. at 5-6, Deckant Decl.

Ex. S ███████████████████████████████████████████████

███████████████████████████████████████; Sukumar Dep. at 76:22-80,

Deckant Decl. Ex. T ██████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████

Even if Defendants' argument were true, publication in academic journals is "not a *sine*

*qua non* of admissibility" and "does not necessarily correlate with reliability." *Daubert*, 509

U.S. at 593; *Crowley v. Chait*, 322 F. Supp. 2d 530, 541-42 (D.N.J. 2004) (rejecting defendant's

"contentions that [a] methodology was unsound simply because it relied upon no reported or

published methodology."). As the *Daubert* court noted, some theories may not have been

published because they are "well-grounded but innovative" or "too particular, too new, or of too

limited interest" for publication. *Id.* Rather, the test of reliability is a flexible one and the

standard for reliability "is not that high." *In re TMI Litig.*, 193 F.3d at 665. As discussed above,

irrespective of Dr. Sukumar's reliance on ASEMAP and the peer reviewed literature in support

thereof, Dr. Sukumar's methodologies and conclusions reliably flow from the facts known to

him and the methodology used. █████████████████████████

████████████████████████████████████████████████

█  ────────────────────────

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████.  *See* 6/10/16 Weir Rebuttal Decl. ¶¶ 67, 72, Deckant Decl. Ex. E.

**4.    Defendants' Criticisms That Dr. Sukumar's Survey Results Are Irrational Go To The Weight Of His Testimony, Rather Than Its Admissibility**

Defendants argue that Dr. Sukumar's survey yields a number of irrational results, "underscoring that his methodology is not reliable."  Def. Br. at 17-19.  That analysis is incorrect.

When considering the reliability of an expert's testimony, the court's inquiry must be based "solely on principles and methodology, not on the conclusions that they generate."  *Daubert*, 509 U.S. at 595.  For that reason, survey results, even if they seem counterintuitive, go towards the weight of the expert's testimony, not its admissibility.  *See, e.g.*, *Crowley*, 322 F. Supp. 2d at 536; *see also Fortune Dynamic*, 618 F.3d at 1038.[11]

████████████████████████████████████████████████████████

████████████████████████████  Defs.' Br. at 20.  However, Defendants misconstrue fundamental principles of conjoint analysis.  When calculating the price premium of more than one attribute, the increase (or change in value) for each of these independent attributes must first be calculated.  By way of analogy, there is no reason to expect that the individual components of an automobile will sum up to the total price of that automobile.  6/17/16 Sukumar Rebuttal Decl. at 15, Deckant Decl. Ex. S.  Further, Defendants' observation is contrary to well-documented statistical principles.  *Id.*  Specifically, when making predictions using linear models, the only valid predictions are those that are constrained within the range of the variables' values that are

---

[11] This reasoning has also been applied in the context of conjoint analysis.  *See Microsoft Corp*, 904 F. Supp. 2d at 2012 (criticisms of a conjoint analysis went "to issues of methodology, survey design, reliability, and critique of conclusions, and therefore go to the weight of the survey rather than admissibility") (internal quotes omitted); *accord TV Interactive Data Corp.*, 929 F. Supp. 2d at 1021-1022.

in the estimation of the linear model. *Id.* Since conjoint analysis is a multi-linear model of consumer utilities that capture consumer tradeoffs in making purchase decisions, one can only constrain the calculation of the price premium to remain within the range of the price levels that are tested ███████████████████████ ). When the premium falls outside the range, the price premium must be truncated to the range of the price tested in the conjoint study. *Id.* Thus the observation that summation of all the cumulative attributes exceeds the retail price of the Maytag Centennial washing machines undermines neither Dr. Sukumar's calculation nor his methodology.[12]

**5.    Defendants' Technical Complaints Regarding Dr. Sukumar's Exclusions From The Survey Data Go To The Weight Of His Testimony, Not Its Admissibility**

Defendants argue that ████████████████████████████████████ ████████████████████████ Defs.' Br. at 21. As such, Defendants argue that exclusion of these respondents was improper because, absent the exclusions, the "price premium" would have been substantially higher and "facially implausible." *Id.* That is wrong.

As Dr. Sukumar explained, it is widely recognized that all utilities or features, including price, should be constrained to increase predictive accuracy. 6/17/16 Sukumar Rebuttal Decl. at 12, Deckant Decl. Ex. S. Specifically, Dr. Sukumar notes that a product lacking a desirable feature should not have a greater value than a product containing that desirable feature, (*i.e.*, respondents preferring the highest priced product as opposed to the one with the lowest price, a so-called "Price Reversal"). *Id.* Price Reversals are well-documented in academic research articles, and are driven by consumer constraints on the range of prices that might be acceptable

---

[12] ████████████████████████████████████████ . In the interest of brevity, Plaintiff incorporate fully herein the arguments contained in Plaintiffs opposition to the Motion to Strike the opinions of Mr. Colin Weir, which discusses the inapt comparison between the C6 and C500 washers. *See* § III.B.3.

to respondents' individual purchase decisions.  *Id.* at 12-13.  As a result, peer-reviewed literature establishes that constrained estimates lead to more reliable predictions or improve predictive validity.[13]  As noted by Dr. Sukumar, different measures can be taken to improve the predictive accuracy when price reversals occur.  *Id.*  Of the different methods, Dr. Sukumar chose to exclude the Price Reversals so that they do not improperly impact his price premium calculation. *Id.*

Moreover, as a result of these exclusions, Dr. Sukumar's calculation of the price premium here was more conservative than it otherwise would have been.  Even after respondents with Price Reversals were excluded,  .  *Id.*  In other words, by properly screening out Price Reversals, while maintaining a sufficient sample size, the survey consisted of only high quality respondents.  *Id.*

*See* 6/10/16 Weir Rebuttal Decl. ¶¶ 67, 72, Deckant Decl. Ex S.

Furthermore, Dr. Sukumar has used this approach successfully in prior cases.  6/17/16 Sukumar Rebuttal Decl. at 13, n.14, Deckant Decl. Ex. S.  The fact that Defendants disagree with this approach goes to the weight of Dr. Sukumar's testimony, rather than its admissibility.  *See, e.g.*, *Voilas v. GMC*, 73 F. Supp. 2d 452, 459 (D.N.J. 1999) (finding that a challenge to an expert's decision to discard certain options goes to the weight to be accorded to the expert's opinion, rather than its admissibility.); *see also TV Interactive Data Corp.*, 929 F. Supp. 2d at 1025-26 (denying motion to exclude expert's survey where defendant argued that "the exclusion

---

[13] These measures are addressed in two papers, one of which was written by Dr. Rossi himself. *Id.*

of the majority of product attributes … led respondents to overvalue each of the product attributes that were tested"); *Patrick v. FirstEnergy Generation Corp.*, 2014 U.S. Dist. LEXIS 151572 (W.D. Pa. Oct. 27, 2014) (finding that defendants' arguments regarding hypothetical bias went only to weight, not admissibility).[14]

### 6. Defendants' Technical Complaints Regarding Dr. Sukumar's Survey Population Go To The Weight Of His Testimony, Not Its Admissibility

Similarly unavailing is Defendants' complaint that "Dr. Sukumar's survey population is not representative of the class" of consumers who purchased Maytag Centennial clothes washing machines. Defs.' Br. at 22.



---

[14] Defendants' reliance on *Oracle Am., Inc. v. Google Inc.*, 2012 WL 850705, at *11 (N.D. Cal. Mar. 13, 2012) is misplaced. In *Oracle*, plaintiffs' expert designed a conjoint survey for smartphones that included only seven (7) product features, even though research showed that real-world consumers considered thirty-nine (39). *Id.* at *9-10. Further, the conjoint analysis did not include "important" product features, such as battery life, wi-fi, weight, and cellular network. *Id.* at *10. Accordingly, the Court in *Oracle* court struck the conjoint analysis as a way to determine market share, because "important" product attributes were excluded in the conjoint. *Id.* This was not the case here, given that Dr. Sukumar studied 19 product attributes.
[15]
http://c.ymcdn.com/sites/www.casro.org/resource/resmgr/Code/Online_Research_Guideline_V1.pdf (last accessed on September 15, 2016)

[16] http://www.marketingresearch.org/issues-policies/mra-code-marketing-research-standards (last accessed on September 15, 2016)



Defendants' remaining technical criticisms of Dr. Sukumar's survey cut towards its

weight, not its admissibility. For example, Defendants argue that Dr. Sukumar's survey is

under-inclusive because the decision to survey ████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████   Defs.' Br. at 23.   Defendants then reverse

course and argue that Dr. Sukumar's survey is over-inclusive because it reflects the U.S. Census

and not a smaller subset of purchasers.  *Id.* at 24.  However, even if a survey's universe is

imperfect, this defect is not fatal to a survey's admissibility.  Rather, the use of an inappropriate

survey universe generally affects the weight given to a survey, not its admissibility.[17]  *Koninkijke*

---

[17] Similarly unavailing is the suggestion that Dr. Sukumar's decision to include "more recent" purchasers had the effect of excluding class members.  Def. Br at 23.  "No survey is perfect, and to the extent that this survey does not perfectly replicate market conditions, the Court may give it

*Philips Elecs. N.V.*, 2016 U.S. Dist. LEXIS 84299 at *17-21 (rejecting objection based on under-inclusiveness of survey, as such challenges go to weight, not admissibility); *see also Sanchez-Knutson v. Ford Motor Co.*, 2016 U.S. Dist. LEXIS 58207, *10 (S.D. Fla. 2016) (rejecting challenge to expert's conjoint analysis, which included use of a national sample rather than a Florida sample, because those challenges "go to the weight of the survey, not its admissibility."); *Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.*, 716 F.2d 833, 844 (11th Cir. 1983) (holding that alleged deficiencies, including poor sampling, inexperienced interviewers, poorly designed questions, and other errors in execution, affected the weight of a proffered survey, and not its admissibility).  Accordingly, none of Defendants' remaining criticisms are grounds to exclude Dr. Sukumar's opinions.

### B. Dr. Sukumar's Opinions Are Consistent With Plaintiffs' Theory Of Liability

#### 1. Dr. Sukumar's Methodology "Fits" The Facts Of The Case

Based solely on a misinterpretation of Plaintiffs' damages model, Defendants contends that "Dr. Sukumar's survey fails to ascertain the portion of the [Maytag Centennial washing machines'] retail price [that was solely] attributable to the Energy Star® logo."  Defs.' Br. at 26.  Thus, Defendants argue that Dr. Sukumar's opinions do not "fit" Plaintiffs' theory of liability.  *Id.* at 25.  Defendants' arguments are flawed for numerous reasons.

Contrary to Defendants suggestion, fit only requires that there be a "connection between the scientific research or test result to be presented and particular disputed factual issues in the case."  *In re Paoli R.R. Yard Pcb Litig.*, 35 F.3d at 743.  The Third Circuit has held that the standard for fit is "not that high," although it is "higher than bare relevance."  *Id.* at 745; *Hartle v. FirstEnergy Generation Corp.*, 7 F. Supp. 3d 510, 516 (W.D. Pa. 2014).

---

less evidentiary weight at trial."  *Koninkijke Philips Elecs. N.V.*, 2016 U.S. Dist. LEXIS 84299 at *17-21.

Here, it is clear that Dr. Sukumar's expert testimony fits Plaintiffs' theory of liability. This case is all about the Energy Star® logo.  That is, Plaintiffs allege that they were injured as a direct and proximate result of Defendants' conduct because they paid a price premium due to the mislabeling of the washing machines with the Energy Star® logo.  Thus, Dr. Sukumar's opinions plainly "fit" Plaintiffs' theory of liability.  *See* 12/28/15 Sukumar Decl. at 4, Deckant Decl. Ex. R

████████████████████████████████████████████████████████

███████████████████████████████████████████

Next, Defendants argue that Dr. Sukumar measured only respondents' subjective "willingness to pay" and did not address "what retailers actually charged putative class members in 2009 and 2010 for the logo on the Washers in this case."  Defs.' Br. at 26-28.  That argument is false.  ██████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████████████

████████████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████

Defendants' reliance on *Saavedra v. Eli Lilly & Co.*, 2014 U.S. Dist. LEXIS 179088 (C.D. Cal. Dec. 18, 2014) is unavailing.  In *Saavedra*, the plaintiffs proposed conducting a conjoint analysis to determine the subjective value a customer placed on having a drug with a 1% withdrawal risk verses a 44% withdrawal risk, and then proposing to apply that percentage to the "out of pocket" co-pay paid by the patient.  The *Saavedra* court rejected plaintiffs "novel theory of damages," because complicating factors in the drug market "sever the relationship" between drug price and value, including the consideration that the prescription drug market is heavily regulated and that insurance plans may pay anywhere from the full price of the drug to a percentage of its full cost.  *Id.* at *16-17.  These are nothing like the facts at hand.

Defendants reliance on *In re NJOY, Inc. Consumer Class Action Litigation*, 120 F. Supp. 3d 1050, 1064 (C.D. Cal. 2015) is similarly unavailing.  In *NJOY*, the plaintiffs alleged that the defendant falsely conveyed the message that electronic cigarettes are healthier than traditional tobacco cigarettes.  Plaintiffs' expert was tasked with conducting a conjoint analysis to determine whether a reasonable consumer would be willing to pay a price premium for the perceived value of the defendant's safety claim.  In other words, the plaintiffs' expert essentially asked respondents to "imagine" a healthy version of the electronic cigarette product and then "imagine what [they] might have paid for such a thing." *Id.* at 1119.  Moreover, plaintiffs' expert did not "dispute that … his conjoint … method analyses provide[d] only a model for testing what a consumer is willing to pay, without considering other factors in a functioning marketplace." *Id.* at 1119.  Accordingly, the district court found that such a method could only measure "the demand side of the equation" because plaintiffs' damage model did "not use any real world

market data and [thus is not designed to] reflect the real world choices of consumers and their economic consequences." *Id.* at 1082.

By contrast, Dr. Sukumar considered numerous forms of supply-side considerations, as discussed above. *See supra.* Unlike the "novel theory of damages" in *Saavedra* and *NJOY*, conjoint analysis techniques have consistently been approved by courts as a reliable method to calculate the price premium associated with a specific product feature, and have been found to satisfy the *Comcast* standard. *See Guido*, 2014 U.S. Dist. LEXIS 165777, at *17-18, *29-30 (granting plaintiffs' motion for class certification, concluding that the proposed damages model, a conjoint analysis that calculated the price premium attributable to specific feature on defendant's hair products, complied with *Comcast* and satisfied Rule 23's predominance requirement); *see also Khoday*, 2014 U.S. Dist. LEXIS 43315, at *102-08 (holding that employment of conjoint analysis to isolate the price premium attributable to a particular feature satisfied *Comcast*); *see also Microsoft Corp.*, 904 F. Supp. 2d at 1120 (finding that conjoint analysis is sufficiently reliable under FRE 702 and the *Daubert* standard).

### 2.   Defendants' Criticism That Dr. Sukumar Failed To Consider The "Benefits Received By Class Members" Is Meritless

Defendants argue that Dr. Sukumar's survey "fails to isolate his 'price premium' from the benefits received by putative class members," such as "rebates and other monetary incentives." *Id.* However, Defendants' argument is misleading and misconstrues the nature of Plaintiffs' claims. Plaintiffs are not suggesting the Maytag Centennial washing machines are valueless, which the above argument implies. This is implicit in Dr. Sukumar's survey because it is focused on the difference in value for consumers between the Maytag washing machines <u>with and without the Energy Star® logo</u>, i.e., the price premium attributable to the Energy Star® logo. Accordingly, Plaintiffs' damages model <u>does</u> account for the other benefits received.

The cases cited by Defendants are inapposite.  *In re POM Wonderful L.L.C.*, 2014 WL 1225184, at *3 (C.D. Cal. Mar. 25, 2014) was a Rule 23 class action involving allegedly mislabeled fruit juices, where the plaintiffs' damages expert was criticized by the court for proposing a "Full Refund Model" that failed to "account for any value, such as calories or hydration, received."  Similarly, in *ConAgra*, plaintiffs' refund model was rejected as it was based on the assumption that consumers receive no benefit whatsoever from purchasing the accused products.  *See Jones v. ConAgra Foods, Inc.*, 2014 WL 2702726, at *23 (N.D. Cal. June 13, 2014) (rejecting the "legally worthless" damages model).  Here, by contrast, Plaintiffs are not proposing a full refund damages model, and the surveys of Drs. Sukumar and Dennis are designed to isolate the price premium solely attributable to the presence of the Energy Star® logo.  *See* Sukumar Dep. at 58:8-22, Deckant Decl. Ex. T ███████████████████

████████████████████████████████████████████

█████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████

Moreover, Dr. Sukumar's conjoint analysis sufficiently considered and controlled for different features and variables across machines.  *See* 6/17/16 Sukumar Rebuttal Decl. at 3, Deckant Decl. Ex. S ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████ Regardless, even if the Court were to accept Defendants' contentions that Dr. Sukumar's analysis ignored relevant

factors or benefits, this does not preclude the admission of his testimony.  *Khoday*, 2014 U.S. Dist. LEXIS 43315, at *105-06 (holding that plaintiffs' failure to "include several more variables in order to be a completely accurate measure of damages" does not indicate that damages will not be measurable on a class-wide basis).

In short, Dr. Sukumar's survey and model is consistent with Plaintiffs' theory of liability – Defendants' misrepresentation caused Plaintiffs and putative class members to pay a price premium over and above what they otherwise would have paid for Defendants' products in the absence of that misrepresentation.  Accordingly, Dr. Sukumar's conjoint analysis satisfies the *Comcast* standard and should not be stricken.

### C.   Irrespective Of Dr. Sukumar's Testimony, Plaintiffs Have Satisfied Their Burden Regarding Class Certification

Even if Dr. Sukumar's expert testimony were to be excluded, this would not mean, as Defendants argue, that Plaintiffs' motion for class certification should be denied.  Defs.' Br. at 30.  Rather, Plaintiffs would nonetheless be able to determine the price premium solely attributable to the Energy Star® logo by relying on the expert reports of Dr. Dennis, Mr. Weir, as well as Whirlpool's own internal calculations.  *See* 12/28/15 Weir Decl. at 8-12, Deckant Decl. Ex. C.  Furthermore, if Dr. Sukumar's methodology were found to be unreliable, this would not render Mr. Weir's or Dr. Dennis's methodologies unreliable.  Indeed, minor flaws in an expert's damages model do not render it inadmissible.  *See Hartle*, 7 F. Supp. 3d at 516; *see also Baldwin v. Bader*, 539 F. Supp. 2d 443, 446 (D. Me. 2008) (holding that an expert's "miscalculations go to the weight, not the admissibility of his opinions") (citing *United States v. Bonds*, 12 F.3d 540, 561 (6th Cir. 1993)).

V.      **CONCLUSION**

For the foregoing reasons, Plaintiffs request that the Court deny Defendants' motion to exclude the expert testimony of Dr. Sukumar in its entirety.

Dated:  September 15, 2016                    Respectfully submitted,

By: _____

                         Neal J. Deckant

Scott A. Bursor
Joseph I. Marchese
Yitzchak Kopel
Neal J. Deckant
BURSOR & FISHER, P.A.
888 Seventh Avenue
New York, NY  10019
(646) 837-7150

James E. Cecchi
Lindsey H. Taylor
CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
5 Becker Farm Road
Roseland, NJ  07068
(973) 994-1700

Antonio Vozzolo
VOZZOLO LLC
345 Route 17 South
Upper Saddle River, NJ  07548
(201) 630-8820

*Co-Lead Interim Class Counsel*