UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLENE DZIELAK, SHELLEY BAKER, FRANCIS ANGELONE, BRIAN MAXWELL, JEFFREY McLENNA, JEFFREY REID, KARI PARSONS, CHARLES BEYER, JONATHAN COHEN, JENNIFER SCHRAMM, and ASPASIA CHRISTY,<br><br>Plaintiffs,<br><br>v.<br><br>WHIRLPOOL CORPORATION, LOWE'S COMPANIES, INC., SEARS HOLDING CORPORATION, THE HOME DEPOT, INC., FRY'S ELECTRONICS, INC., APPLIANCE RECYCLING CENTERS OF AMERICA, INC., LOWE'S HOME CENTER, and LOWE'S HOME CENTER, LLC,<br><br>Defendants. | Civ. No. 12-89 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

By Order and Opinion (DE 360, 361) filed December 5, 2019,[1] I granted the motions of defendants Whirlpool Corporation, Lowe's Home Centers, LLC, Sears Holding Corporation, Fry's Electronics, Inc., and The Home Depot, Inc. for summary judgment. Now before the Court is the plaintiffs' motion for reconsideration of that decision. (DE 364) The defendants oppose the motion. (DE 368, 369) The motion was sealed by order of Magistrate Judge James B. Clark, III. (DE 370)

For the reasons stated herein, the motion for reconsideration is **DENIED**.

---

[1] "DE ___" refers to the docket entry number in this case. The Opinion may also be found at 2019 WL 6607220.

## I. STANDARD OF REVIEW

The standards governing a motion for reconsideration are well settled. Reconsideration is an extraordinary remedy that is to be granted "very sparingly." L. Civ. R. 7.1(i) cmt. 6(d); *Friedman v. Bank of Am., N.A.*, No. 9-2214, 2012 WL 3146875 at *2 (D.N.J. Aug. 1, 2012). Generally, reconsideration is granted in three scenarios: (1) when there has been an intervening change in the law; (2) when new evidence has become available; or (3) when necessary to correct a clear error of law or to prevent manifest injustice. *See North River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Local Civil Rule 7.1(i) requires a movant to specifically identify "the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." *Id.* Evidence or arguments that were available at the time of the original decision will not support a motion for reconsideration. *Damiano v. Sony Music Entm't, Inc.*, 975 F. Supp. 623, 636 (D.N.J. 1997); *see also N. River Ins. Co.*, 52 F.3d at 1218; *Bapu Corp. v. Choice Hotels Int'l, Inc.*, No. 7-5938, 2010 WL 5418972 at *4 (D.N.J. Dec. 23, 2010) (citing *P. Schoenfeld Asset Mgmt. LLC v. Cendant Corp.*, 161 F. Supp. 2d 349, 352 (D.N.J. 2001)).

All of that said, this Court will not cling to a ruling if it is convinced that it was erroneous. I therefore have not denied the motion on threshold grounds, but have given due consideration to the plaintiffs' substantive arguments. I assume familiarity with my prior Opinion and the record of the case.

## II. DISCUSSION

The motion is focused, as a motion for reconsideration should be. Plaintiffs raise a single issue, which they say was overlooked in the Court's prior Opinion. Part of the basis for the Court's ruling was that "the washers were all manufactured and purchased at a time when they were, according to the DOE's guidance, Energy Star-qualified." *Dzielak*, 2019 WL 6607220 at *15.[2] It was only thereafter, in July 2010, that the Department of Energy

---

2   [T]he "branding" theory of liability fails because the washers were all manufactured and purchased at a time when they were, according to the DOE's

("DOE"), issued guidance that changed the testing protocols. This guidance, say plaintiffs, was not a new testing regulation as such, but rather an interpretation of existing regulations, and therefore should be given full retroactive effect. Thus, say plaintiffs, the testing standards promulgated in July 2010 should be deemed to have existed at the prior time of manufacture and sale, and defendants may be liable for breach of warranty.

The issue as presented by the plaintiffs is one of administrative law. The July 2010 guidance, they stress, could not have constituted a new regulation. "Substantive rules," they point out, have the force of law, and can only be promulgated after appropriate public notice and comment, and that did not occur in the case of the July 2010 guidance. Thus, the July 2010 guidance was at most an "interpretive rule," which elaborated on or interpreted then-existing law. (Pl. Br. 2 (DE 365), citing *Haas v. Peake*, 525 F.3d 1168, 1195–96 (Fed. Cir. 2008)). Such interpretive rules are less cumbersome to promulgate than substantive rules, but they lack the force of law and receive less weight in the agency's adjudicative process. (*Id.* at 3 (citing *Perez v. Mortg. Bankers Ass'n*, 135 S. Ct. 1199, 1204 (2015)).

I need not rule definitively on this issue of administrative law. The plaintiffs' argument would have more force if this were an administrative proceeding in which Whirlpool challenged the binding effect of the July 2010 guidance. But it is not. This is a claim of (*inter alia*) breach of warranty, in

---

       guidance, Energy Star-qualified. Neither side now disputes that the Energy Star logo was authorized when the washers were sold to the class members. . . .

       Then, in July 2010, the DOE changed the interpretation of its testing regulations and protocols. (As noted above, the washers remained the same, but the testing protocols—for example, the use of Fill Level 3 rather than Fill Level 4 to measure capacity—were revised. *See* pp. 11–15, *supra*.) In January 2011, DOE notified Whirlpool that under the new testing standards its washers now no longer qualified to carry the Energy Star brand. By this time, however, each named plaintiff had purchased his or her washing machine. Accordingly, Plaintiffs are unable to prove that that the Energy Star logo was false or that Defendants failed to live up to their end of the bargain on the Energy Star-branding theory of liability.

*Id.* (footnote omitted).

which the plaintiffs are claiming they did not receive what they were entitled to expect when, in 2009, they purchased a washer which complied with the then-current 2007 Energy Star guidance. More formally, such a breach of warranty claim requires (i) that the Energy Star logo constituted "an affirmation, promise or description" about the Washers, (ii) that the "affirmation, promise or description" became the basis of the bargain, and (iii) that the Washers did not conform to that "affirmation, promise or description." *Dzielak,* 2019 WL 6607220 at *12.

As the Court pointed out, the "affirmation, promise or description" claimed by the plaintiffs was a general representation of better efficiency—it was not tied specifically to a particular testing regime.[3] Indeed, it was *only* by maintaining that level of generality that the plaintiffs avoided summary judgment on that first element. The second element, too, necessarily downplayed the particular testing regime or results, in favor of the plaintiffs' alleged shared understanding that the Energy Star logo generally stood for improved efficiency—something that would be true under either the 2007 or the 2010 protocols.

There was a tradeoff. By availing themselves of a lower standard on elements 1 and 2, the plaintiffs took on a heavier legal burden on element 3. As the Court observed, "the difficulty in establishing a breach is the downside of the first element's relatively lax requirement of a non-specific affirmation, promise, or description. The vaguer the statement, the more difficult to prove it false; the more general the promise, the more difficult to prove it has been breached." *Id.* at *14 n.9. It was here that the plaintiffs' proofs failed. The washers were sold as Energy Star certified, and they were. Even after

---

[3] The plaintiffs claimed that consumers understood the Energy Star logo "as an affirmation of fact or a promise regarding the energy efficiency of the washing machines"—nothing more. (MSJ Opp'n 3 (emphasis supplied by plaintiffs).) The Court relied, to the defendants' detriment, on the plaintiffs' insistence "that they only expected the Energy Star logo to indicate *some* measure of better performance." 2019 WL 6607220 at *14 n.9.

promulgating the July 2010 guidance, DOE permitted the washers to remain designated as Energy Star washers until January 2011. Throughout, the Washers did deliver a superior level of efficiency, even if under the new measuring protocols it was not quite the same level of efficiency. As I wrote, the plaintiffs "must take the bitter with the sweet"; "[f]or purposes of the third element, [they] may not now insist that Defendants are liable because Plaintiffs were warranted a specific measure of performance." *Id.* at *14 n.9.

The plaintiffs' argument of administrative law, whatever its merits, does not affect the basis on which the Court awarded summary judgment.

## CONCLUSION

The motion for reconsideration (DE 364) is therefore denied.

Dated: July 14, 2020

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty**
**United States District Judge**